MARGARET HEEG, Plaintiff-Appellant, v. JEWEL COMPANIES, Defendant-Appellee.

First District (1st Division)  No. 1—90—1588

Opinion filed July 6, 1992.

Beermann, Swerdlove, Woloshin & Barezky, of Chicago (Howard A. London, of counsel), for appellant.

Hubbard, Hubbard, O'Brien & Hall, of Chicago (Mark R. Mayer and John Skapars, of counsel), for appellee.

JUSTICE MANNING delivered the opinion of the court:

This is an appeal from an order of the trial court vacating a jury verdict for $90,000 in favor of plaintiff Margaret Heeg and against defendant Jewel Companies and granting a new trial. On December 21, 1983, plaintiff Margaret Heeg filed a negligence action against defendant Jewel Companies seeking damages for injuries she received when she fell on defendant's premises. The complaint alleged that about August 4, 1982, plaintiff was a customer in a Jewel store located at 305 Lake Marion Road, Carpentersville, Illinois, where she slipped and fell and suffered permanent injuries. Plaintiff asserted that as the direct and proximate result of one or more acts of negligence, defendant breached

the duty owed to her to exercise ordinary care to keep the premises reasonably safe or to warn plaintiff of any unreasonable risk of injury.

Plaintiff argues on appeal that the trial court abused its discretion in granting defendant a new trial based on alleged errors which defendant maintained occurred.

Dr. Mira, an orthopedic surgeon, testified that he first treated plaintiff in November 1984. At that time, plaintiff complained of pain in her lower back, left ankle, right knee, and neck. Plaintiff explained to Dr. Mira the history of her injuries. She stated that in August 1982 she slipped on a floor while shopping in a food store. Dr. Mira examined plaintiff's posture, her spine, knee and ankle. He found that her back showed a slight increase of curvature and that flexin of the lower back was 70% normal. Plaintiff experienced lower back pain and pain in her right knee when bending and turning. Dr. Mira testified that there appeared to be a sign of irregularity to the meniscus or cartilage between the thigh bone and the knee bone. Plaintiff's left ankle also showed slight swelling. Dr. Mira took X rays of the lower back and it showed signs of degenerative arthritis. He also took X rays of plaintiff's knee and back. He diagnosed her condition as degenerative disease of the lower back and probable tear of the cartilage in the right knee with a cyst. Mira opined that the cause for the degenerative arthritis was general wear and tear. He also opined that the cause for the tear of the cartilage was trauma, as well as the degenerative process. Dr. Mira stated that given the history of the onset of plaintiff's symptoms after the fall at the grocery store in August 1982, the fall aggravated a preexisting condition of degenerative arthritis in both areas. Dr. Mira prescribed aspirin and exercise.

He next treated plaintiff in February 1985. Plaintiff continued to experience discomfort at that time and stated that she had difficulty with her knee and right ankle. Dr. Mira prescribed Motrin and recommended microscopic surgery to treat the cartilage in the right knee.

Plaintiff visited Dr. Mira next on March 15, 1985, and June 18, 1985. Plaintiff's condition had not improved and the microscopic surgery was scheduled. Plaintiff was placed on Tylenol with codeine and examined again on July 22, 1985. Dr. Mira opined after the surgery that plaintiff had moderate degenerative arthritis with moderate degenerative tear of the cartilage and a cyst on the right knee. He continued to treat plaintiff until November 1985, describing various forms of medication for her discomfort. Dr. Mira gave his prognosis of plaintiff's condition as static and he thought it would not change.

In May 1989 Dr. Mira performed a second antroscopic surgery on plaintiff's knee, but plaintiff continued to experience pain in the knee.

Dr. Kanter, a physician specializing in orthopedic surgery, testified that he initially treated plaintiff in February 1982 and last treated her in August 1989. On the initial visit, plaintiff told Kanter that she had been treated at a hospital after falling at a Jewel food store. She also explained that she was under the care of a chiropractor who treated her twice each week. Plaintiff complained of pain in her back and right leg. Dr. Kanter testified that he performed a neurological examination of her back and neck and took X rays of her spine. Dr. Kanter diagnosed plaintiff as having strained or sprung the muscles and soft tissue parts of the cervical spine, the neck area, and lower back. He also diagnosed arthritis both in the neck and lower back area. Plaintiff was placed on a nonsteroidal, anti-inflamatory agent to reduce the tightness and minor arthritis discovered, and advised to do exercise. Dr. Kanter opined that plaintiff would not experience the same state of health that she experienced prior to the injury because of the underlying arthritis and the superimposed injury. He stated that the only medical history that he had of plaintiff was her injury in August 1982 and that her current condition was related to that injury.

Dr. Kanter testified that plaintiff periodically came to visit him after moving to Pennsylvania. On a visit in September 1985 she complained that she continued to experience pain and difficulty with her left ankle and right knee. Kanter took X rays of the knee which revealed mild arthritis and a cyst. He diagnosed plaintiff to be suffering from a cyst behind the right knee and soft tissue sprain to the ankle.

In October 1987 plaintiff complained of residual lower back and right knee pain. She informed Dr. Kanter that she had previously had arthroscopic surgery to her right knee subsequent to his seeing her in July 1985. She again expressed pain in the knee and back. Dr. Kanter testified that he X-rayed the right knee and diagnosed the condition as atrophy of the thigh muscle that needed building up by therapy. He also diagnosed the injury to plaintiff's back as degenerative disk disease.

Dr. Kanter stated that when he again examined plaintiff in 1989, his diagnosis was that her lower back was the same as it had been in 1987. Dr. Kanter stated that his prognosis of plaintiff's knee in 1989 was that she would have permanent symptomatology and difficulty relative to the knee. Plaintiff gave Dr. Kanter the information he relied upon to state his opinion.

Plaintiff's daughter, Rhonda Marotta, testified that at about 8 p.m. on August 4, 1982, she travelled to the Jewel store with her daughter and mother where she purchased some groceries. Marotta stated that she paid for the items by check in the amount of $30.31.

Marotta stated that plaintiff's knee hit the ground and that she saw green onion peels mashed into the ground on which plaintiff had slipped, and also underneath plaintiff's sandals. Marotta testified that there were no warning signs in the front of the store where plaintiff fell.

Marotta testified that after plaintiff fell, one of the cashiers came over to them, but Marrotta could not identify the cashier by name or describe what she looked like. She did testify that the cashier wore a Jewel's uniform. Marotta stated that the cashier then instructed them to prepare a report of the incident with the main office, and a male employee with blondish-brown hair came to the desk to talk with plaintiff. Marotta did not identify that person in court, but she stated that he wore a white frock.

Marotta testified that as they left the store she noticed a young male sweeping the area; however, she was not able to give a description of him or what he wore. Marotta stated that she and plaintiff then went home and later to a hospital.

Marotta further testified that she had been with plaintiff on another occasion some years earlier when plaintiff was injured at Frank's Nursery by a fallen ceiling tile. However, her deposition testimony given on June 6, 1984, was inconsistent with this testimony given at trial. In her deposition taken after the fall at Jewel she stated that she had never witnessed any other occurrence where plaintiff had suffered an injury.

Dr. Altiere, a chiropractic physician, testified that he examined plaintiff in August 1982 for severe lower back pain. He conducted an orthopedic exam and a chiropractic exam, a regular physical examination and other tests. Altiere stated that plaintiff had a decrease in the range of body movement due to pain. There were also signs of problems with the lower back and neck due to pressure on the soft tissue and muscles. Dr. Altiere took X rays of plaintiff's full spine. He diagnosed plaintiff as having suffered an acute traumatic lumbosacral sprain or injury to the lower portion of the back, and also strain to the neck and shoulder. Dr. Altiere opined that the cause of the condition was the fall that plaintiff sustained in Jewel.

Plaintiff was treated by Altiere for her injuries nine times in August 1982 and about 10 additional times until the end of 1982. Although plaintiff's condition slightly improved, Dr. Altiere referred her to an orthopedic doctor in December 1982. He did not see her again until one year later.

Dr. Reddy provided deposition testimony. She testified that she had been plaintiff's family physician from 1980 through February 1982. Reddy had treated plaintiff for pains in her shoulders, neck and back in December 1981. This treatment resulted from injuries that plaintiff re-

ceived when she was struck by a ceiling panel at a Frank's Nursery. The X rays revealed tenderness in the neck, shoulder, and back muscles. Reddy prescribed a muscle relaxant, and as part of her treatment of plaintiff, she relied on records of plaintiff's previous hospitalization for chest pain. Reddy stated that her review of plaintiff's past medical history disclosed that she had a herniated disk with pain to the left leg. She also testified that the last time she treated plaintiff was in February 1982.

On cross-examination of Reddy, defense counsel asked whether the medical records history showed that any diagnostic testing was conducted on plaintiff by which a determination was made that she had a herniated disk and Reddy replied "No, there is no such thing like that."

Dr. Robert Thompson, an orthopedic surgeon, testified that he examined the medical records relating to plaintiff and opined that she suffered a minor aggravation of a previous existing arthritis condition as a result of the alleged Jewel accident in August 1982. Thompson also stated that plaintiff had back problems which were later diagnosed as a herniated disk, and subsequently she had surgery in April 1973 for that problem.

Dr. Thompson stated that in his opinion there was no causal relationship between plaintiff's alleged accident in Jewel and the resulting right knee injury she complained of because the knee injury was reported two years after the alleged accident. Dr. Thompson opined that based on his review of the medical records of the chiropractor who treated plaintiff for her injuries following the Jewel accident, plaintiff's injury had subsided by December 1982. Thompson stated that he did not believe plaintiff's present complaint of injury to her back was connected to the August 1982 accident. He opined that natural history of degenerative arthritis was the cause of her symptoms.

Thompson opined that plaintiff had this condition of her neck and back prior to the date of August 4, 1982. He opined that the cyst which developed in plaintiff's knee two years after the alleged accident was caused by development of arthritic changes in the knee in front of the location of the cyst.

Plaintiff testified that on August 4, 1982, she drove to Carpentersville, Illinois, to visit with her daughter Rhonda and later went shopping at Jewel. After purchasing groceries, Rhonda pushed the cart and the two walked toward the exit, passing checkout counters. Plaintiff stated that, as she walked, she slipped and fell as her left leg buckled under her, and her back snapped and cracked. She eventually fell down on her right knee.

Plaintiff testified that she remained on the floor for about one minute and observed smashed onions on the heel of her shoe. She stated in her opinion that the onion had lain on the floor for an hour; however, she did not actually know the amount of time that the onion had been there.

Plaintiff's counsel attempted to introduce a photograph into evidence that the court had previously ruled inadmissible. The photographs showed a picture of the front of the store. The court advised counsel that only two of the three photographs were admissible. However, plaintiff's counsel continued to display the third photograph throughout the trial proceedings.

Plaintiff testified that after she fell a uniformed female cashier about 30 years old with short dark hair approached her and asked "Are you okay?" Plaintiff testified that she advised the cashier that she was injured. She stated that the cashier said, "Before you leave the store I would suggest that you make a report," and that "The floor was always a mess." Plaintiff testified that the cashier picked up the onions, then went to the desk, where a second employee came and wrote her name, address and telephone number on a piece of paper. Defense counsel objected to the answer as hearsay. The court allowed it into evidence under the excited utterance exception to the hearsay rule, but later reconsidered its ruling. Plaintiff did not see a name tag on the person, but described him as 30 years old with blondish-brown hair and wearing an apron. Plaintiff stated that as she left the store she observed a male employee sweeping the area in which she fell.

Two days after the accident, plaintiff was treated by Dr. Altiere for her back. Before the fall at Jewel, plaintiff had previously had arthritis and a back sprain. Plaintiff testified that she continued to see Dr. Alterie the remainder of 1982, and in February 1983 began visiting Dr. Kanter.

Plaintiff was also treated by Dr. Reddy, her family doctor in 1982; however, Dr. Reddy did not treat plaintiff for the injury that resulted from the Jewel fall. Dr. Reddy treated plaintiff for neck problems in 1981 that resulted from an injury she received when a tile fell on her head and injured her neck. Plaintiff testified that Reddy never gave her treatment for her back.

Plaintiff testified that as a result of her injury in August 1982, she had difficulty performing housework, gardening, working and personal relations with her husband.

Peter Joy and Patricia Hemmingsen, employees of defendant, were working in the Jewel Carpentersville store at the time of the alleged incident. Mr. Joy testified that on the evening of August 4, 1982, he was

the assistant manager in charge of the store. He testified that he was 24 years old, had dark brown hair and did not wear an apron while working. He stated that managers were not allowed to leave the building except to check the parking lot or on company related business. Neither employee had any direct knowledge or independent recollection of the alleged incident. Mr. Joy testified that he conducted an investigation of the store to determine which employees had worked that day. He questioned each of them individually and found that no one had any knowledge of the incident, and the company files contained no report of the incident. The company policy dictated that only a manager or assistant manager could complete accident reports, and there was no exception to this requirement.

Both Joy and Hemmingsen testified that produce was never delivered through the front doors of the store but rather through the loading area in the back of the building.

Plaintiff's counsel argued in closing that plaintiff was entitled to damages for her past pain and suffering, and the cost of her medical bills and her lost time, a total of $92,862.62.

Defense counsel did not argue the reasonableness of the damages requested by plaintiff's counsel; however, he argued the issue of liability and causation. He never contended that the $92,000 was excessive and did not suggest a lower award.

Judgment was entered on the verdict, and on April 11, 1990, defendant filed a post-trial motion for judgment *n.o.v.* or, in the alternative, for a new trial. On May 10, 1990, the court heard argument on the motion. The court denied the request for judgment *n.o.v.* but ordered a new trial on the ground that errors had been committed by the court and by counsel for plaintiff.

Plaintiff argues on appeal that the trial court abused its discretion in vacating the jury verdict of $90,000 and in granting a new trial on the ground of alleged error.

The decision to grant a new trial is within the sound discretion of the trial court and should not be disturbed unless a clear abuse of discretion appears in the record. (*McKenzie v. Romeiser* (1990), 205 Ill. App. 3d 830, 563 N.E.2d 837.) An abuse of discretion may be found where there is no basis in the record to support a new trial. *Nicholl v. Scaletta* (1982), 104 Ill. App. 3d 642, 432 N.E.2d 1267.

In this case, plaintiff contends that the errors which defendant raised in its post-trial motion were either waived by defendant's failure to raise them below, or that their impact was not so prejudicial that defendant was denied a fair trial.

Plaintiff first argues that no error occurred by her characterization of a defense witness' testimony during closing argument. She argues that the witness testified that he never saw any produce on the floor of the store, although defense counsel argued that the witness admitted seeing produce on the floor. Plaintiff maintains that her summation of the testimony was not an intentional mischaracterization of the testimony and that defense counsel cured any error that may have occurred during his closing argument.

Plaintiff next asserts that she did not misstate the evidence by arguing that two of defendant's witnesses had large financial interests in the case. She contends that this was proper comment because a witness' interest, bias or prejudice are factors to be considered in determining a witness' credibility.

Plaintiff's counsel stated in rebuttal argument that he never impeached Jewel employees Joy or Hemmingsen because they never gave depositions. Defendant asserted that the statement gave the jury the impression that the evidence was being withheld from plaintiff. Plaintiff argued that the comments were proper because defense counsel invited the comments when in closing he stated that neither employee had been impeached with prior inconsistent statements.

Plaintiff also made comments on defendant's failure to produce other employee witnesses during trial. Defendant argued that the comments made by plaintiff improperly implied to the jury that defendant was hiding evidence from it. Plaintiff argued that the remarks were neither improper nor prejudicial, given her right to comment on defendant's failure to present sufficient evidence.

Plaintiff further contends that defense counsel erroneously asserted that she personally attacked him and his law firm. In seeking a new trial, defendant advised the court that plaintiff stated, "The party line in this case had been from its inception—eight years now—It wasn't our fault." Plaintiff maintains that this argument was not at defense counsel, nor to attack his integrity or suggest that he lied.

As to defendant's contention that plaintiff's opinion during closing argument constituted error, plaintiff asserted that the mere words "I believe" were not error, and if so, they did not constitute harmful error. During closing argument she stated, "I believe that after reviewing all of the evidence, certain things will become apparent."

Another assignment of error was plaintiff's counsel's explanation during closing argument that plaintiff was not a doctor, but that she had been held to a very high standard to almost have a perfect memory. Defendant argued that this argument misstated the law and injected a prejudicial standard into the proceedings. Plaintiff's counsel argued that

the comments were fair in reply to defendant's cross-examination of plaintiff.

During closing argument, plaintiff's counsel made reference to a cancelled check in the possession of plaintiff. She stated that defendant was entitled to look at the check, but that it did not do so. Plaintiff contends that the evidence of the existence of the check was neither improper nor prejudicial, since its existence was established by plaintiff's daughter without objection from defense counsel.

Plaintiff maintains that reference to her right knee in closing argument was not improper. Although the court had ruled that the right knee injury should not be considered by the jury, counsel for plaintiff maintained that her comments were proper as a summary of the evidence in accordance with plaintiff's testimony. Plaintiff's counsel further argued that she never mentioned that plaintiff was entitled to damages for a knee injury.

Defense counsel maintains that the new trial was proper because plaintiff's counsel misstated the record in accusing defense counsel of producing evidence that suggested that plaintiff had a prior back surgery. Plaintiff further contends that a new trial was not proper where her comments during rebuttal argument were fair comment on the evidence. She asserted that her rebuttal argument was in reference to the direct examination of Dr. Reddy, and that defense counsel's direct examination of Dr. Reddy suggested the fact that plaintiff had prior back surgery.

Plaintiff also contends that her questioning of Dr. Reddy during an evidence deposition and later referral to her as "the Indian doctor" during rebuttal argument was not improper. Plaintiff argues that this reference to Dr. Reddy was made to identify her for the jury, not to impugn Dr. Reddy's character. Defense counsel argued that counsel's reference to the doctor's ethnic origin was an attempt to suggest that the doctor was incompetent and distracted the jury from its impartial consideration of her testimony.

Plaintiff maintains that no error occurred when a photograph that was not admitted into evidence remained on the table during trial. She maintains that defendant suffered no prejudice by having the photograph on the table.

Plaintiff asserts that the comment concerning the testimony of defendant's clerk at the time of the accident was improper. The court permitted the testimony into evidence based on the excited utterance exception. After the court heard the testimony, it concluded that the testimony was self-serving. The court commented that it did not think that the effect was cured by calling it a self-serving statement. The court

reasoned that the statement gave the jurors the impression that somebody in the store had complained that they made a mess of things. Although the court stated that this factor was not the deciding factor, it indicated that it had permitted serious errors requiring a new trial.

Considerable latitude is allowed in making closing and rebuttal argument. (*People v. Thompkins* (1988), 121 Ill. 2d 401, 521 N.E.2d 38.) The trial court's ruling in this regard will be upheld, absent an abuse of discretion. (*People v. Cisewski* (1987), 118 Ill. 2d 163, 514 N.E.2d 970.) Here, several of the remarks were merely comments on the evidence and legitimate inferences therefrom. (*People v. Harris* (1989), 187 Ill. App. 3d 832, 543 N.E.2d 859.) Some were responses to defense counsel's argument. (*People v. Morando* (1988), 169 Ill. App. 3d 716, 523 N.E.2d 859.) Others were mere overstatements of the evidence. (*People v. Enoch* (1989), 189 Ill. App. 3d 535, 545 N.E.2d 429.) Furthermore, remarks regarding defendant's failure to produce witnesses, and failure of witnesses to give deposition testimony, although error, did not constitute reversible error. *People v. McKinney* (1983), 117 Ill. App. 3d 591, 453 N.E.2d 926.

In this case, the errors complained of do not rise to the standard of egregious, blatant behavior sufficient for the trial court to order a new trial. (*People v. Emerson* (1983), 97 Ill. 2d 487, 455 N.E.2d 41.) Although plaintiff's counsel's conduct did raise questions of compliance with the court's rulings on objections to the admissibility of some evidence, it cannot be said that this behavior caused the jury to decide the case on emotions and prejudice. The jury heard testimony from the two occurrence witnesses, doctors and defendant employees. While there were issues of impeachment raised, the jury is charged with weighing the evidence and the credibility of the witnesses. *Arnold N. May Builders, Inc. v. Bruketta* (1981), 100 Ill. App. 3d 722, 426 N.E.2d 1246.

The court noted that the most serious of the alleged errors was that of its admission of a statement into evidence under the excited utterance exception to the hearsay rule. However, the court specifically noted that this was not its reason for granting a new trial. Even with the court's acknowledgment of its error, the cumulative effect of the errors was not so prejudicial that defendant was denied a fair trial. Thus, the trial court abused its discretion in granting defendant a new trial.

For the above reasons, the judgment of the circuit court of Cook County is reversed.

Reversed.

BUCKLEY, P.J., and O'CONNOR, J., concur.