CHRISTIAN LAGONI, Plaintiff-Appellee, v. HOLIDAY INN MIDWAY *et al.*, Defendants-Appellants.

First District (5th Division) No. 1—91—3517

Opinion filed May 6, 1994.—Rehearing denied June 22, 1994.

Williams & Montgomery, Ltd., of Chicago (James J. Horstman, Barry L. Kroll, Thomas F. Cameli, and Lloyd E. Williams, Jr., of counsel), for appellants.

John E. Marszalek and Donald H. Olek, both of Chicago, for appellee.

JUSTICE GORDON delivered the opinion of the court:

Plaintiff brought suit against defendants seeking damages for injuries he suffered when the car he was driving collided with a van owned by defendant Holiday Inn Midway and driven by defendant Mushtaq Siddiqui. The jury returned a verdict in favor of defendants. Plaintiff filed a post-trial motion seeking a new trial which the trial court granted. Defendants filed a petition for leave to appeal from the order granting a new trial pursuant to Illinois Supreme Court Rule 306(g). (134 Ill. 2d R. 306(g).) For the reasons set forth below, we reverse the trial court's order granting plaintiff a new trial.

## FACTS

Between 7 and 7:30 p.m. on January 11, 1983, a car driven by plaintiff Christian Lagoni and a van driven by defendant Mushtaq Siddiqui were both travelling southbound on Ridgeland Avenue between 87th Avenue and 88th Avenue. During that stretch of roadway, Ridgeland Avenue has two northbound and two southbound lanes which are divided by a raised ribbed median. There is a left-hand turn lane which southbound cars use to turn into a grocery store parking lot.

It had been snowing that day and the roads were icy. Lagoni's wife and oldest daughter were riding with him. Both vehicles entered the left-turn lane from the lane immediately to its right. The front end of defendants' van subsequently collided with the rear right corner of plaintiff's vehicle in the left-turn lane. As a result of this collision, both vehicles suffered very minor body damage.

After speaking with police who came onto the scene, Lagoni went home. That evening he began to suffer severe pains in his head and neck. He was subsequently taken to a hospital emergency room where he received treatment. He returned home that night.

Lagoni subsequently filed this suit naming as defendants Siddiqui, Holiday Inn Midway and Ali Yusef, who was the general partner of Holiday Inn. A jury trial was held.

At trial, the plaintiff, Christian Lagoni, testified that prior to the accident, he entered the left-turn lane and came to a stop. He was waiting to turn left into the grocery store for five to ten minutes when his car was hit from behind by the defendants' van. Lagoni stated that as a result of this impact, his car was moved about 10 to 15 feet forward, coming to rest on the ribbed median.

Lagoni said that before the accident he was in "perfect health" and had "no problems with anything." He never received treatment for neck injuries or severe headaches prior to the accident and had never before experienced pain similar to what he experienced after the accident.

On cross-examination, the following exchange occurred concerning plaintiff's emergency room treatment:

"Q. Did they ever mention the fact that you had a preexisting degenerative condition to you?

A. No, they did not.

Q. Are you aware of the fact that you had a preexisting degenerative condition to your neck?"

Plaintiff's counsel then objected on the grounds that defense counsel was attempting to introduce substantive evidence for the defense on cross-examination which could not be properly introduced even if offered during defendants' case in chief. During a sidebar on this objection, the trial court sustained the objection as to the first question concerning the emergency room staff stating that the form of defense counsel's question was "without a doubt grossly improper." Defense counsel then inquired whether he could ask plaintiff "whether he was aware of the fact that he had a preexisting degenerative condition." The court answered that he could. The court then proceeded to rule that the emergency room record which indicated that defendant had a preexisting injury would not be admissible at trial.

After the sidebar, the trial court sustained the objection in open court and then instructed the jury to completely disregard the question. Defense counsel asked plaintiff the following question:

"Q. Mr. Lagoni, were you aware of the fact that you had a preexisting cervical arthritic condition before the occurrence?

A. No, sir."

Defense counsel then impeached plaintiff with interrogatories in which plaintiff had answered that as the result of the accident, he suffered an aggravation of his preexisting cervical arthritis. Plaintiff's

counsel stipulated to the interrogatories and the answers given to those interrogatories.

Suzanne Lagoni, plaintiff's wife, testified that she was riding in plaintiff's vehicle when it was struck. She stated that the car moved between 5 and 10 feet after impact. On cross-examination, she stated that they were stopped about five to six feet from the ribbed median when they were struck. She testified that after the accident "I had to back [the car] up a little bit" in order to turn into the parking lot, indicating that the car was pushed forward by the impact.

Debra Hammonds, daughter of Christian and Suzanne Lagoni, testified next. She stated that she was riding in the backseat of the car on the night of the accident. Hammonds said that they were sitting in the left-hand turn lane for a good five minutes before they were struck from behind by defendants' van. She could not tell how far the car moved after impact, but said that it did move onto the ribbed median as a result of the impact.

On cross-examination, defense counsel impeached Hammonds with prior deposition testimony:

"Q. [DEFENSE COUNSEL] Do you remember giving a deposition in this case on May 19th of 1986?

A. Yes.

Q. At that time you were under oath?

A. Yes.

Q. You were asked a number of questions by an attorney?

A. Yes.

Q. And you answered those questions truthfully?

A. To the best of my ability.

Q. Were you asked this question at that time, and did you give this answer, Page 13, line two:

'Q. After the accident, where was your car located immediately after the contact with the van?

A. It was still in the turning lane.'

Did you give that answer to that question?

A. Well, I must have if it's written down.''

There was no objection to this impeachment.

Defendant Mushtaq Siddiqui then testified, with the assistance of an interpreter, as an adverse witness pursuant to section 2—1102 of the Illinois Code of Civil Procedure. He admitted that his van struck the rear right side of Lagoni's car when the van slid on some ice after defendant applied the brakes.

Defense counsel was then permitted to cross-examine Siddiqui, as if on direct examination. Over a general relevance objection, Siddiqui testified that he was married and had two children. He further

testified that he was born in Pakistan, came to the United States in 1981 and became a United States citizen in 1986.

Defense counsel then asked Siddiqui without objection whether he was currently employed. Siddiqui answered that he was self-employed in his own business, a doughnut shop. Although there was no objection at the time, the next day plaintiff moved to have that testimony stricken. The court denied plaintiff's request on the grounds that the testimony was proper as general background information on the witness.

Concerning the accident, Siddiqui stated that he was travelling at five miles per hour when he entered the left-turn lane. Plaintiff's vehicle was about 10 feet ahead of his and in the lane immediately to the right of the left-turn lane. Siddiqui said that plaintiff's car then unexpectedly entered the left-turn lane. He testified that when he applied the brakes the van slid over and struck the right rear of Lagoni's car. Both vehicles were moving at the time of impact.

Defendant called Dr. Marshall Matz, who was a physician specializing in the field of neurosurgery. Dr. Matz stated that it was his opinion that plaintiff's degenerative condition predated the automobile accident. During his direct examination, defense counsel asked Dr. Matz whether he was being compensated by defendant for his time to which Dr. Matz responded that he was. Defense counsel also asked Dr. Matz whether he did most of his work for plaintiffs or defendants. Dr. Matz responded that most of his work is for defendants.

On cross-examination, the following colloquy occurred:

"Q. [PLAINTIFF'S COUNSEL]: You are here because you were retained by the law firm of Williams and Montgomery, who represent the Defendants?

A. Yes.

* * *

Q. You have been retained by the attorney representing the Defendants, is that correct?

A. I agree.

* * *

Q. And when you testify in court the vast majority of the time, in excess of 90% of the time you are testifying in favor of the attorneys for the defense?

A. Correct.

Q. You testify on an average in court about once per month?

A. Yes.

Q. And almost exclusively for the defense law firms?

A. 80 or 90 percent.

* * *

"Q. This is not the first time that you testified for Williams and Montgomery?

A. I agree.

Q. When was the first time that you testified for Williams and Montgomery?

A. Some years ago. I couldn't give you the dates.

Q. And over the course of the years how many times have you testified in court for Williams and Montgomery?

A. Over all of the years about 15 times.

\* \* \*

Q. In addition to testifying in court you also have examined people who filed lawsuits and claims for injuries for law firm of Williams and Montgomery?

A. Yes.

Q. How many times over the years have you conducted examinations and consulted with attorneys from Williams and Montgomery regarding the examinations?

A. That I can't tell you."

On redirect, the following exchange then occurred:

"Q. [DEFENSE COUNSEL]: Doctor, you do examine patients at our request from time to time?

A. Of course.

Q. And also sometimes you will tell us a condition is related to an event that the plaintiff is claiming?

A. If that is my opinion.

Q. And when you do give us that opinion we settle those cases or close the file.

[PLAINTIFF'S COUNSEL]: Objection.

THE COURT: Sustained.

Q. [DEFENSE COUNSEL]: When you give us that opinion, Doctor, we accept that opinion, don't we?

[PLAINTIFF'S COUNSEL]: Objection. It is irrelevant.

THE COURT: Sustained."

The defense then rested. Prior to closing arguments, plaintiff's counsel made a motion *in limine* to preclude defense counsel from using the background information elicited from Siddiqui concerning his family and current employment to play on the sympathy of the jury. The court did not expressly rule on this motion, but instead admonished both sides to exercise caution in this area.

During his closing argument, defense counsel made the following statement:

"One key thing, though that Mrs. Hammonds told us, that the car was in the left hand lane after the impact, it was not on the

median, it did not get pushed forward, and I do think she was very straight forward with us on that issue."

Plaintiff's counsel objected to this statement on the grounds that the evidence did not support that statement. The court sustained this objection. Defense counsel then corrected himself, stating that Hammonds "told us that on previous testimony," referring to her deposition testimony. The trial court then expressly instructed the jury that any statement made by an attorney which was not based on the evidence was to be disregarded.

Defense counsel also made the following statement during his closing argument:

"I represent Mushtaq Siddiqui, the man that came from Pakistan in 1981 to the United States, he has certain dreams, certain ideals, and certain hopes."

Plaintiff's counsel made an objection which the court sustained. Defense counsel then continued:

"I think maybe we all have certain ideals and hopes. And one of those hopes I think is best expressed in Washington, D.C. before our Supreme Court building. Above that building is the phrase, 'Equal Justice for All.' This is all Mr. Siddiqui is asking in this case, that is all Holiday Inn is asking in this case, that is all Mr. Yusef is asking in this case.

Whatever result the twelve of you come up with, whatever the twelve of you decide, all I ask, all my clients ask is that you make sure that equal and fair justice is done for everybody in this courtroom. And that is important."

Plaintiff's objection to the later portion of this statement was overruled.

During his closing argument, defense counsel also used the pronoun "I" on several occasions. Near the end of defense counsel's closing argument, plaintiff objected, and the court instructed defense counsel to refrain from using personal pronouns.

The jury subsequently returned a verdict in favor of defendants, and the plaintiff filed a motion for a judgment notwithstanding the verdict or in the alternative for a new trial. In his motion, plaintiff raised the following alleged errors among others in support of his motion: (1) defense counsel's improper use of emergency room records in asking plaintiff to admit that the emergency room staff told him that he had a preexisting degenerative condition; (2) defense counsel's questioning of Dr. Matz on the settlement practices of defense counsel's law firm; (3) that defense counsel improperly elicited irrelevant and prejudicial background information concerning defendant Siddiqui's family and financial status including that he was married, had two children, and owned a doughnut shop at the

time of trial; (4) that defense counsel misstated the testimony of Debra Hammonds during his closing argument by using prior statements from her discovery deposition; (5) defense counsel's repeated use of the personal pronoun "I" during his closing argument; and (6) that defense counsel improperly attempted to play on the sympathies of the jury by telling the jury that Siddiqui immigrated to this country with dreams of bettering his life.

The hearing on defendant's motion was scheduled for October 2, 1991. On September 30, 1991, plaintiff filed a supplementary brief on his motion. On October 1, 1991, defense counsel contacted the trial judge's chambers to request additional time to respond to the supplementary brief and to supplement the record. The trial judge denied the defendant's request for a continuance and the hearing proceeded as scheduled. The trial court did not reserve ruling on the motion despite defendants' contention that plaintiff's representation of what occurred during trial was not accurate. Without the benefit of a transcript of the proceedings, the trial court subsequently granted plaintiff's motion after hearing argument from counsel. Defendant subsequently filed a petition pursuant to Illinois Supreme Court Rule 306(g) which we granted. 134 Ill. 2d R. 306(g).

OPINION

A "motion for a new trial is addressed to the discretion of the trial court, and its decision will not be disturbed unless there is a clear abuse of discretion." (*Duffek v. Vanderhei* (1980), 81 Ill. App. 3d 1078, 1087, 401 N.E.2d 1145; *Jones v. Polish Falcons* (1993), 244 Ill. App. 3d 348, 614 N.E.2d 397.) Generally, a trial court "is allowed greater latitude in granting a new trial than in denying one." (*Torrez v. Raag* (1976), 43 Ill. App. 3d 779, 782, 357 N.E.2d 632.) As such, a reviewing court will not reverse a trial court's grant of a new trial merely because it would have come to a different conclusion on the same facts. *Reidelberger v. Highland Body Shop, Inc.* (1981), 83 Ill. 2d 545, 416 N.E.2d 268.

█ It is an abuse of discretion, however, for the trial court to substitute its judgment for that of the jury by granting a new trial where the evidence supports the verdict and it does not appear that the moving party was denied a fair trial. (*Watson v. City of Chicago* (1984), 124 Ill. App. 3d 348, 464 N.E.2d 1100; *Bradley v. Caterpillar Tractor Co.* (1979), 75 Ill. App. 3d 890, 394 N.E.2d 825; see also *Kitsch v. Goode* (1977), 48 Ill. App. 3d 260, 271, 362 N.E.2d 446 ("[n]either the trial court nor the appellate court should sit as a second jury to consider the nuances of the evidence or the demeanor and credibility of the witnesses. Granting a new trial merely because the trial court

would have reached a different result, where there is evidence which if believed would support the jury's verdict, is an abuse of discretion").) Consequently, an abuse of discretion will be found if there is no basis in the record to support the grant of a new trial. *Heeg v. Jewel Cos.* (1992), 232 Ill. App. 3d 75, 596 N.E.2d 765.

Defendants urge on appeal that an abuse of discretion standard does not apply in this case because plaintiff waived the errors he cited in his motion for a new trial by failing to object at trial. Defendants argue that the proper standard in instances of waiver is that of the plain error doctrine as articulated by the Illinois Supreme Court in *Gillespie v. Chrysler Motors Corp.* (1990), 135 Ill. 2d 363, 553 N.E.2d 291. In *Gillespie*, the court stated that the waiver doctrine will be strictly applied "unless the prejudicial error involves flagrant misconduct or behavior so inflammatory that the jury verdict is a product of a biased passion, rather than an impartial consideration of the evidence." 135 Ill. 2d at 375-76.

■ We disagree that the plain error standard is the proper one to be applied in this instance. Plaintiff made timely objections to each of the alleged errors that he raised in his motion for a new trial. The lone exception was the elicitation by defense counsel of Siddiqui's current occupation. However, we note that plaintiff did object to this question the next day and ask that the jury be instructed to disregard the information in question. Plaintiff also subsequently objected in a motion *in limine* to the use of this background information in closing argument.

A. Defendants' Cross-Examination of Lagoni

We first address defense counsel's cross-examination of plaintiff in which he asked plaintiff whether the emergency room medical staff had mentioned to him that he had a preexisting condition. Plaintiff contends the question somehow reveals the contents of the emergency room record and the purported diagnostic opinion contained therein.

■ Generally, "prior injuries, as they relate to [a] litigant's present state of health are an appropriate subject of inquiry; the series of questions as a whole must be considered rather than a single question taken out of context." (*Dolan v. Crammond* (1979), 71 Ill. App. 3d 289, 293, 389 N.E.2d 206.) While we agree that at the time of trial an attempt to introduce an emergency room record, particularly during cross-examination, may well have constituted technical error (*Monier v. Winkler* (1987), 158 Ill. App. 3d 724, 511 N.E.2d 246; *Martin v. Zucker* (1985), 133 Ill. App. 3d 982, 479 N.E.2d 1000; but see 145 Ill. 2d R. 236 (now providing that hospital records can be admitted, after

a proper foundation, as a business record)), defense counsel's question did not attempt to introduce, or even expressly refer to, the emergency room record. In this instance, defense counsel's question went to plaintiff's own knowledge of his preexisting condition and did not mention the emergency room record or its contents. Despite plaintiff's protestations to the contrary, any echo of the emergency room record in defense counsel's question was oblique, not obvious.

Moreover, any error which would have resulted from the mere asking of this question would be totally harmless. We first note in this respect that although plaintiff denied on the stand that he was aware of any preexisting condition, he was impeached with his own interrogatories during cross-examination in which he admitted that he had such a prior condition. We further note that defendants' expert testified to plaintiff's preexisting condition and there was no other evidence offered at trial through medical testimony that plaintiff did not possess this condition. (See *Krengiel v. Lissner Corp.* (1993), 250 Ill. App. 3d 288, 621 N.E.2d 91 (any error in admitting statement concerning prior injuries contained in emergency room record was harmless where there was uncontradicted testimony offered without objection that plaintiff suffered from two degenerative conditions which were not the result of trauma).) As such, we cannot see how plaintiff was prejudiced to any greater degree by defense counsel's question concerning what the emergency room personnel told him when plaintiff himself admitted to having that very same preexisting condition. (See *Lawson v. Belt Ry. Co.* (1975), 34 Ill. App. 3d 7, 339 N.E.2d 381 (no prejudicial error resulted from plaintiff counsel's reading of accident report which had not been admitted into evidence during closing argument when jury was aware of substantive content of the report prior to closing argument).) Furthermore, any prejudice which may have resulted would have been substantially neutralized when the trial court took corrective action, instructing the jury to "completely disregard" the question. See *Pyse v. Byrd* (1983), 115 Ill. App. 3d 1003, 450 N.E.2d 1374; *Dolan*, 71 Ill. App. 3d at 293.

### B. Rehabilitation of Dr. Matz

Plaintiff next argues that the trial court's grant of a new trial was supported by defense counsel's question of Dr. Matz concerning his relationship with defense counsel's law firm and the impact of his evaluation on the law firm's course of conduct in the event that it received an evaluation that favored a plaintiff. Plaintiff claims that this question attempted to elicit highly prejudicial evidence of settlement practices. We disagree.

■ We note at the outset that this question was never answered by Dr. Matz because of plaintiff's timely objection. The lack of an answer to this question would have largely dissipated any potential prejudicial impact contained in the question itself. (*Wilson v. Chicago Transit Authority* (1987), 159 Ill. App. 3d 1043, 513 N.E.2d 443.) As the question was left unanswered, the jury thus heard no testimony concerning the impact of Dr. Matz's evaluation on the practices of defense counsel's law firm. See *Lake County Forest Preserve District v. Continental Illinois National Bank & Trust Co.* (1976), 35 Ill. App. 3d 942, 343 N.E.2d 6 (any error which occurred as a result of counsel's question as to who lived in a particular mansion was cured when objection to that question was sustained and no answer to that question was given).

Moreover, it does not appear that this question was erroneous in the context in which it was asked. Although questions concerning settlement negotiations between the parties to a lawsuit are generally barred, as they tend to be viewed as an admission of guilt (*Uhr v. Lutheran General Hospital* (1992), 226 Ill. App. 3d 236, 589 N.E.2d 723; *Barkei v. Delnor Hospital* (1988), 176 Ill. App. 3d 681, 531 N.E.2d 413), the allegedly improper evidence at issue here is not the type of traditional settlement evidence barred at trial. This evidence was not offered as proof of settlement negotiations between the parties of this lawsuit. In fact, if there was any inference to be drawn, it would be to the contrary. The testimony here as to the practice of defense counsel's law firm was elicited to establish that Dr. Matz was not a mere puppet, but rather preserved his independence in making his evaluations.

While ordinarily such testimony cannot be introduced by a party for the sole purpose of bolstering the credibility of its witness, in this case, it was used as proper rebuttal. In this respect, we note that the validity of Dr. Matz's opinion was directly brought into issue by plaintiff's cross-examination of him in which Dr. Matz was extensively questioned about his prior work for defense counsel's law firm, including how frequently he examined plaintiffs in other personal injury cases for defense counsel's firm and how often he testified on its behalf. Consequently, we conclude that the question concerning Dr. Matz's relationship with defense counsel's firm was invited by plaintiff's cross-examination of Dr. Matz (*Kniceley v. Migala* (1992), 237 Ill. App. 3d 72, 603 N.E.2d 843; *American National Bank & Trust Co. v. Thompson* (1987), 158 Ill. App. 3d 478, 511 N.E.2d 1206) and constituted a proper attempt to rehabilitate Dr. Matz by placing his relationship with defense counsel's firm in a more objective light. That the focus of the question was on the rehabilitation of the witness

rather than on the settlement practices of the law firm also reduces the potential prejudicial impact which the question may have had.

C. Defendant Siddiqui's Reference to his Family and Occupation During Examination By Defense Counsel

We next turn to defense counsel's examination of defendant Siddiqui during which he elicited the fact that Siddiqui was married with two children. Defense counsel also elicited that Siddiqui was self-employed at his own doughnut shop. Plaintiff contends that Siddiqui's domestic circumstances are irrelevant to the underlying action and that the question which elicited the fact that Siddiqui owned a doughnut shop was an improper reference to the financial status of a party.

Generally, while reference to the family circumstances (marital status and family description) of a party is irrelevant in a personal injury action (R. Hunter, Trial Handbook for Illinois Lawyers, Civil, § 63.36, at 865 (6th ed. 1989)), reversible error from such a reference will only result where there is some undue emphasis on the party's family circumstances. See *McCarthy v. Spring Valley Coal Co.* (1908), 232 Ill. 473, 83 N.E. 957; *LeMaster v. Chicago Rock Island & Pacific R.R. Co.* (1976), 35 Ill. App. 3d 1001, 343 N.E.2d 65; *McKasson v. Zimmer Manufacturing Co.* (1973), 12 Ill. App. 3d 429, 299 N.E.2d 38.

■ Here, the facts that Siddiqui was married and had two children were only mentioned once during his examination by defense counsel. Moreover, these facts were not set forth standing alone, but were elicited from Siddiqui in conjunction with other background information. (See *LeMaster*, 35 Ill. App. 3d at 1014 (evidence of personal injury plaintiff's family circumstances was not prejudicial as there was no undue emphasis on such circumstances and the testimony at trial was relevant to the issue of the extent of those injuries).) We further note that the size of defendant Siddiqui's family was not such as to elicit special sympathy or compassion from the jury, insofar as it was of normal size for people of that age. (1990 United States Census.) Consequently, considering the aforementioned factors, to permit this single reference to provide the basis for the granting of a new trial would extend the scope of judicial discretion beyond its permissible latitude. See *LeMaster*, 35 Ill. App. 3d at 1014; *McKasson*, 12 Ill. App. 3d at 440 (appellate court found no abuse of discretion in the trial court's decision to overrule an objection regarding a question as to whether personal injury plaintiff had a wife and children; although irrelevant, such evidence was not unduly emphasized so as to arouse sympathies of the jury); *Brayfield v. Johnson* (1965), 62 Ill. App. 2d 59, 65, 210 N.E.2d 28 (improper reference in closing

argument to the fact that a party had a wife and family was not reversible error where there was no "undue emphasis" of the party's family circumstances and there was no disclosure of the "family's poverty, necessitous circumstances or financial difficulties").

Nor did the fact that Siddiqui testified that he owned a doughnut shop support the trial court's decision to grant a new trial. We initially note with respect to this alleged ground that no objection was interposed at the time this information was elicited. Consequently, the only permissible basis upon which the elicitation of this information can support the grant of a new trial is pursuant to the denial of a fair trial standard. (*Gillespie*, 135 Ill. 2d at 375-76.) We submit that there is no justification for the conclusion that the impact of defendant Siddiqui's ownership of a doughnut shop denied plaintiff a fair trial. (*Delany v. Badame* (1971), 49 Ill. 2d 168, 274 N.E.2d 353; *Pagel v. Yates* (1984), 128 Ill. App. 3d 897, 902, 471 N.E.2d 946.) Moreover, even if objected to, the elicitation of this evidence would not be sufficient to support the grant of a new trial.

Not every reference to a party's proprietary interest or occupation which touches on the party's financial status constitutes reversible error. (*McMahon v. Richard Gorazd, Inc.* (1985), 135 Ill. App. 3d 211, 481 N.E.2d 787.) The reference must be reasonably understood to refer to the financial status of the parties and must also be so harmful and prejudicial that it resulted in an improper verdict. *Schultz v. Siddens* (1989), 191 Ill. App. 3d 622, 548 N.E.2d 87; *Scheibel v. Groeteka* (1989), 183 Ill. App. 3d 120, 538 N.E.2d 1236; *McMahon*, 135 Ill. App. 3d at 223.

A single reference to the fact that a party owns a doughnut shop cannot be considered to constitute an improper reference to a party's financial status. Such disclosure does not necessarily create a reference of wealth, but by the same token, neither does it connote poverty or an inability to pay an adverse judgment. (See *Lake County Forest Preserve District*, 35 Ill. App. 3d at 947 (counsel's question, "[w]ho lives in that house?" referring to large mansion in aerial photograph, was ambiguous and could not be understood as a reference to the financial status of one of the parties); see also *Newlin v. Foresman* (1982), 103 Ill. App. 3d 1038, 1050, 432 N.E.2d 319 (plaintiff's comment during rebuttal that defendant's father was a doctor did not constitute reversible error since the "mere mention that the defendant's father is a doctor does not insinuate his minor son is independently wealthy").) The thrust of defense counsel's inquiry is to provide information as to defendant Siddiqui's occupation as a shopkeeper rather than to convey his financial status.

The Illinois Supreme Court's decision in *Delany v. Badame* (1971),

49 Ill. 2d 168, 274 N.E.2d 353, is on point. There, the plaintiff claimed that defense counsel had impermissibly stressed the financial condition of the defendant by showing that he was a college student. Our supreme court rejected plaintiff's assertion of error, stating:

> "We can see no prejudice to the plaintiff by the allowance of such testimony. The occupation of a witness is a proper subject of inquiry and we do not read into the question the sole purpose of showing to the jury the defendant's poor financial condition. Nor was there any improper stressing of defendant's financial condition." *Delany*, 49 Ill. 2d at 177-78.

See also *Pagel*, 128 Ill. App. 3d at 902 (plaintiff counsel's reference to defendant as "big horse breeder" and to horse racing as the "sport of kings" did not unduly emphasize defendant's financial status).

Moreover, even were the reference more direct, courts have generally required more than a single reference before finding that the references were so harmful and prejudicial that they resulted in an improper verdict. (*Scheibel*, 183 Ill. App. 3d at 142 (any error resulting from mention of plaintiff's financial status in opening statement and plaintiff's testimony that he was only working because of his poor financial position was harmless); *McMahon*, 135 Ill. App. 3d at 223 (plaintiff counsel's questioning of plaintiff as to his income and his wife's income during the year 1982, how he was living on that income, and that he had stopped receiving physical therapy because he failed to pay for services was improper, but reversal was not required as this questioning did not constitute a significant portion of evidence taken at trial).) We also note that this information was elicited with a whole panoply of general introductory background information and was not emphasized in any manner. See *Griffin v. Rogers* (1988), 177 Ill. App. 3d 690, 532 N.E.2d 591 (testimony that witness was owner of corporation and that such corporation had only three witnesses was merely a brief introductory statement which showed little relevance and which was not unduly emphasized in any manner); *McKanna v. Duo-Fast Corp.* (1987), 161 Ill. App. 3d 518, 515 N.E.2d 157 (questions concerning size of party's plant did not prejudice opposing party as such questions were merely introductory).

### D. Defense Counsel's Closing Argument

Nor do we find merit for the grant of a new trial with respect to any reliance by the trial court on defense counsel's closing argument. (*Heeg*, 232 Ill. App. 3d at 84.) Improper closing argument by an attorney can provide a basis for a new trial. (*Lee v. Calfa* (1988), 174 Ill. App. 3d 101, 528 N.E.2d 336.) Generally, the determination of

whether comments of counsel have deprived a party of a fair trial is a matter resting in the first instance in the discretion of the trial court. (*Kern v. Uregas Service of West Frankfort, Inc.* (1980), 90 Ill. App. 3d 182, 412 N.E.2d 1037; *Greig v. Griffel* (1977), 49 Ill. App. 3d 829, 364 N.E.2d 660.) A closing argument must be clearly improper and prejudicial to warrant reversal of a judgment. *Boasiako v. Checker Taxi Co.* (1986), 140 Ill. App. 3d 210, 488 N.E.2d 672.

Plaintiff first raises the fact that defense counsel misstated Hammonds' trial testimony by saying that she testified that plaintiff's car was not pushed forward onto the median after the accident. As previously mentioned, Hammonds had in fact testified that plaintiff's car was pushed forward onto the median at trial, but was impeached by defense counsel with her prior deposition testimony in which she stated that plaintiff's car was not on the median after the accident.

■ We cannot agree that this misstatement of Hammonds' testimony had any prejudicial impact since it was immediately objected to and corrected by defense counsel, who admitted that he was making a reference to Hammonds' deposition testimony rather than her testimony at trial. (See *Northern Trust Bank v. Carl* (1990), 200 Ill. App. 3d 773, 775, 558 N.E.2d 451 (counsel's reference to defendant as the "poor truck driver" three times did not substantially prejudice defendants as record indicated among other things that defense counsel explained that he did not use the term in referring to defendant's financial condition).) Defense counsel could have properly interjected the impeaching deposition testimony during closing argument, thereby reminding the jury that she testified in direct conflict during her deposition. (*Poltrock v. Chicago & North Western Transportation Co.* (1986), 151 Ill. App. 3d 250, 502 N.E.2d 1200; *Brown v. Jannotta* (1968), 103 Ill. App. 2d 468, 243 N.E.2d 622.) Moreover, this misstatement comprised only a small segment of defense counsel's closing argument and was accompanied by the trial court's admonition that arguments of counsel do not constitute evidence. *Greig*, 49 Ill. App. 3d at 843 (counsel's statement in closing argument concerning irrelevant matter did not deny defendants a fair trial where such statement "covered only three sentences in plaintiff's closing argument, which stretches over approximately 23 pages of the record"); *Randall v. Naum* (1981), 102 Ill. App. 3d 758, 430 N.E.2d 323; see also *American National Bank & Trust Co. v. Thompson*, 158 Ill. App. 3d at 488.

Plaintiff next argues that defense counsel's comment concerning defendant Siddiqui's national origin and emigration from Pakistan was an improper attempt to elicit sympathy from the jury. A statement made by counsel relating to race may be, but is not neces-

sarily, prejudicial. (*Mindt v. Shavers* (1983), 214 Neb. 786, 337 N.W.2d 97; *Serpe v. Rappaport* (1984), 103 A.D.2d 771, 477 N.Y.S.2d 403.) The primary consideration in determining whether such a statement was improperly prejudicial is whether it is relevant to any issues of the case or whether it was calculated to arouse racial prejudice. (*Mindt*, 214 Neb. at 795, 337 N.W.2d at 102.) As explained:

> "It is the unquestionable privilege of counsel to indulge in all fair argument in favor of the contentions of his client. Yet, he goes outside of his duty and his right when he attempts to excite prejudice in the minds of the jury against his adversary, thereby drawing the minds of the jury away from the matter in dispute and subjecting them to influences entirely foreign to the case." R. Hunter, Trial Handbook for Illinois Lawyers, Civil, § 63.36, at 863 (6th ed. 1989).

We conclude that his reference to the fact that Siddiqui was born in and emigrated from Pakistan was not an improper comment designed to interject Siddiqui's nationality into the case. First, we note briefly at the outset that defense counsel's comment did not convey any information which was not already within the jury's knowledge as Siddiqui testified without objection that he had emigrated from Pakistan and became a United States citizen.

Second, in the usual instance, the claim of prejudice is usually made by a party whose race or national origin is in the minority when her race or national origin has been improperly highlighted by an opposing party. (See, *e.g.*, *Davis v. Glaze* (1987), 182 Ga. App. 18, 354 S.E.2d 845; *Mindt*, 214 Neb. at 795, 337 N.W.2d at 102.) In contradistinction, the reference made here to defendant Siddiqui's national origin was not made by an opposing party, but his own counsel. (See *Ramos v. Pankaj* (1990), 203 Ill. App. 3d 504, 561 N.E.2d 744 (defense counsel's reference to defendant's lack of mastery of the English language was not an improper reference designed to appeal to the passion and sympathy of the jury); *Lawson*, 34 Ill. App. 3d at 26 (plaintiff counsel's remark that defense counsel had attempted to create prejudice against plaintiff was not an improper reference to race).) A self-reference to his own Far Eastern origin cannot be translated into an improper slur on plaintiff's ethnic identity.

Manifestly, the reference in this case was an attempt to neutralize any potential prejudice against defendant, not to create such prejudice against plaintiff. While similar comments could in some instances be improper, such as where those comments attempt to seek favor for a party by injecting the issue of national origin into the case, we cannot say that it is improper for counsel to seek an unbiased trier of fact and equal justice for his client regardless of his country of national origin.

On point is *Holeman v. Smallwood* (1980), 89 Ill. App. 3d 796, 412 N.E.2d 41. There, plaintiff claimed that defense counsel improperly injected a racial reference in his closing argument when he stated: "Black and white, young and old, they are all the same. They are all equal when they walk into this courtroom." (*Holeman*, 89 Ill. App. 3d at 800.) The *Holeman* court stated that there was "nothing inflammatory or prejudicial" in that statement. *Holeman*, 89 Ill. App. 3d at 800; see also *Haryanto v. Saeed* (Tex. Civ. App. 1993), 860 S.W.2d 913 (plea made during closing argument for all citizens to stand against prejudice and disrespect of the legal system by any person regardless of race, nationality or wealth was not *per se* improper).

Plaintiff's final contention with respect to defendant's oral argument is that defense counsel's use of the personal pronoun "I" improperly conveyed defense counsel's personal beliefs on the lawsuit. It is well established that although considerable latitude is allowed in making closing arguments (*Heeg*, 232 Ill. App. 3d at 84), counsel may not express his own personal belief on the issues (*People v. King* (1916), 276 Ill. 138, 114 N.E. 601) or vouch for the credibility of a witness. (*Appel v. Chicago City Ry. Co.* (1913), 259 Ill. 561, 102 N.E. 1021.) However, not every use of the pronoun "I" constitutes an impermissible personal comment. In instances where counsel was merely commenting on the evidence presented at trial, a court will not find error present in the form of an impermissible personal opinion merely because counsel used the pronoun "I" during closing argument.

On point is *Malatesta v. Leichter* (1989), 186 Ill. App. 3d 602, 542 N.E.2d 768. There, counsel stated, during closing argument with respect to defendant's expert witness, "I do not understand a man who can do what he did here. *** Why he took the stand and said that is an absolute mystery to me." (*Malatesta*, 186 Ill. App. 3d at 626.) The court determined that statement was a "fair comment" on that witness' testimony. Counsel also stated during the same closing argument that "I consider [this case] to be one of the most egregious exercises in perjury I have ever seen." (*Malatesta*, 186 Ill. App. 3d at 626.) The court concluded that this comment was not prejudicial and did not support the grant of a new trial.

In this case, defense counsel's use of the personal pronoun "I" was limited to otherwise fair comments on the evidence presented at trial. Most importantly, defense counsel's comments did not state or convey what counsel personally believed, but rather what the evidence showed. Although counsel should have avoided the use of the personal pronoun "I," the comments in this case carried with them far less potential personal opinion than those present in *Malatesta*.

We note that plaintiff's objection to this remark was sustained and the trial court instructed the jury that argument of counsel did not constitute evidence and was not to be considered by them. (See *Atwood v. Chicago Transit Authority* (1993), 253 Ill. App. 3d 1, 624 N.E.2d 1180.) Consequently, defense counsel's use of the personal pronoun "I" does not provide a basis for the trial court's grant of a new trial. See *Heeg*, 232 Ill. App. 3d at 84.

Therefore, we cannot agree that any of defense counsel's comments raised by plaintiff, alone or in sum, provide a sufficient basis to support the trial court's decision to grant a new trial. See *Heeg*, 232 Ill. App. 3d at 84 (trial court abused its discretion in granting new trial in spite of alleged errors including: counsel's misstatement of a witness' testimony during closing argument; counsel's reference to physician called by opposing counsel as "the Indian doctor"; and counsel's use of the term "I believe" during closing argument); *Principato v. Rudd* (1981), 102 Ill. App. 3d 362, 430 N.E.2d 63.

Consequently, we fail to find more than superficial error in any of plaintiff's contentions that he raised as support to justify a new trial. The presence of some error is virtually inevitable in any trial of any length or complexity, but the mere presence of error where not shown to be prejudicial cannot be allowed to vest the trial court with the power to substitute its judgment for that of the jury. By no means is there any error present of a sufficient magnitude to have prejudiced plaintiff or support the trial court's exercise of discretion in granting a new trial. Consequently, we reverse the trial court's grant of a new trial and reinstate the jury's verdict of no liability. *Bergen v. Shah-Mirany* (1980), 83 Ill. App. 3d 752, 404 N.E.2d 863 (defense counsel's misstatements of fact when questioning expert witnesses were harmless and therefore could not serve as the basis for a grant of a new trial); *Principato*, 102 Ill. App. 3d at 367; *Bradley*, 75 Ill. App. 3d at 899 (trial court abused its discretion in granting new trial where none of the errors were consequential and could not have prejudiced the plaintiff even if taken cumulatively); see also *Reidelberger*, 83 Ill. 2d at 558 (plaintiff was not deprived of a fair trial as the result of defense counsel's tactics; consequently, trial court's grant of a new trial was an abuse of discretion); *Heeg*, 232 Ill. App. 3d at 84 (trial court abused its discretion in granting new trial even though moving party asserted numerous errors as grounds for such new trial including counsel's: mischaracterization of witness testimony during closing argument; misstatement of witness testimony; comment on opposing party's failure to produce a witness; personal attack on opposing counsel; interjection of personal opinion during the closing

argument; misstatement of the applicable law; reference to prior injury suffered by the plaintiff; and reference to testifying physician as the "Indian doctor").

For the foregoing reasons, the judgment of the circuit court is reversed.

Judgment reversed.

MURRAY, P.J., and COUSINS, J., concur.