MADISON NATIONAL BANK, APPELLEE, V. MORRIS GROSS, APPELLANT.

FILED SEPTEMBER 20, 1915. No. 18178.

1. **Banks and Banking: ACTION FOR INTEREST ON SPECIAL DEPOSIT: DEFENSE.** In an action against a bank to recover interest on a special deposit upon an alleged contract of the bank to pay such interest, it is immaterial as a defense on the part of the bank that the deposit was made pursuant to a stipulation by the depositor with other parties to maintain such deposit.

2. **Appeal: IMMATERIAL EVIDENCE.** It is not reversible error on the part of the trial court to refuse to allow any rebuttal of immaterial evidence. The remedy against such immaterial evidence is a motion to strike it out of the record.

3. ——: **TRIAL TO COURT: FINDINGS OF FACT.** In a law action tried by the court, the findings of fact have the same force and effect as the findings of a jury, and will not be reversed, if supported by substantially conflicting evidence, unless clearly wrong.

4. ——: **SUFFICIENCY OF EVIDENCE.** The evidence in this case, indicated in the opinion, is not such as to require us to say that the findings of the trial court are clearly wrong.

Appeal from the district court for Madison county: Anson A. Welch, Judge. *Affirmed.*

*G. W. Shields & Sons,* for appellant.

*Willis E. Reed, contra.*

Sedgwick, J.

The plaintiff began this action against the defendant in the district court for Madison county upon two promissory notes. The defendant answered admitting the notes, and alleged: That he, "on the 2d day of October, 1905, and for many years prior thereto, had large amounts of money upon deposit and subject to check in the Madison State Bank; that on and prior to the said 2d day of October, 1905, there was pending against this defendant, in the United States circuit court, for the district court of Nebraska, a certain lawsuit, wherein it appeared that this defendant might have to pay from $6,000 to $8,000, by virtue of a judgment in said court in said cause, in a few years thereafter; that for the purpose of meeting said judgment when it did come, and for the purpose of being sure that he would have the cash to satisfy the same when it was rendered, he desired to put $6,000 or $7,000 upon deposit, drawing the legal rate of interest, and he went to said Madison State Bank, with which bank he was then doing business, and stated his wishes and purposes with reference to said money to the officers of said bank. He offered to make a special deposit therein, which would not be drawn out for three or four years; that then and there he was informed that said bank would receive such deposit upon a special book and pay interest thereon, at the legal rate of interest; that then and there this defendant deposited with the said Madison State Bank the sum of $3,282, and on the 5th day of March, 1906, deposited with the said bank in said special account the sum of $171.60; then on the 17th day of November, 1906, this defendant deposited further in said special account the sum of $3,200, his total deposit being $6,653.60; that on or about the 7th day of January, 1911, a judgment was entered in said

cause against this defendant, and it became necessary for him to get his money at said bank for the purpose of paying the same upon said judgment. The defendant then and there went to said bank and asked for his deposits, with interest thereon at the legal rate of interest, and said bank refused to pay the same, but consented to pay the principal, without interest; that at said time it was absolutely necessary, to save a levy upon his property, for this defendant to have said money, so he gave a check upon said special account for the amount of the principal, without interest; that there was due upon said special account the sum of $1,928.97, which said defendant demanded of the said Madison State Bank, but that no part thereof has been paid, whereby the said plaintiff became, was, and is, indebted to the said defendant in the sum of $200, over and above the amount due upon said notes sued upon herein, together with interest thereon at the rate of 7 per cent. per annum, from the said 7th day of January, 1911."

The defendant asked judgment against the plaintiff for his $200 and interest. The plaintiff replied, admitting the deposit in a special account as alleged, but denying the agreement to pay interest thereon. The cause was tried by the court without a jury. The court found against the defendant on his set-off, and entered a judgment for the plaintiff for the amount of the notes sued upon, and the defendant has appealed.

The defendant then had an account in the Madison State Bank, which was afterwards reorganized as the Madison National Bank, and was continually borrowing money of the bank upon his promissory notes. He was also in litigation with his brothers in the federal court, and expected to be required to pay as the result of that litigation $6,000 or $8,000. He testified that the bank was familiar with his business and knew his situation, and that he told the cashier: "You know this is hanging over my head—that judgment—I don't know how it may come out; you can't tell how about it will go. I have got the money. I don't know how to invest it to bring money. I am a farmer; I can raise stock, but I don't know anything about the banking

business.  Mr. Taylor went to work and fixed that for me."
The cashier gave him another deposit book marked "Morris Gross, Special," and the defendant transferred $2,856.40 from his personal account to this special account, and afterwards paid more money into this special account. The question is whether he has proved that he is entitled to interest on this special account.

There is some evidence which is claimed tends to show that this special account was a fund in some manner under the control of the federal court, but this does not seem to be material.  If this defendant provided the fund, and the bank contracted to pay interest thereon, the payment of such interest would clearly have benefited the defendant only, and it would seem that the bank would be bound by its contract with defendant to pay interest on the special deposit.  It is therefore immaterial that the court first allowed plaintiff's evidence in regard to the control of this fund by the federal court, and afterwards, when it appeared that such evidence was immaterial, refused to allow the defendant to rebut the testimony.  This is a law action tried to the court, and the findings of the court have the same force and effect as findings by a jury.  They will not be set aside by this court for a mere difference of opinion as to the weight of the evidence, especially when the evidence is taken orally in the presence of the trial court. If the evidence is substantially conflicting, the judgment will not be reversed, unless clearly wrong.

The question is:  Does the evidence so clearly prove that the bank agreed to pay interest on this open special deposit account that the findings of the trial court must be reversed as clearly wrong?  The defendant was borrowing large sums of money at the bank from time to. time while this money was on deposit.  It seemed to him just that the high rate of interest he was paying to maintain this deposit should be partially, at least, offset by allowing interest on the deposit.  He may have supposed that interest would be allowed.  He testifies that his contract was made with Taylor, the cashier, and was afterwards confirmed by Mrs. Stuart, the president of the bank.  He

is contradicted by both of these witnesses, who testify positively that no such agreement was made. The defendant's own testimony is not very clear and convincing. After he had testified as above quoted, he was questioned and answered as follows: "What did you say, if anything, to him about wishing to have this money earning interest? A. Yes. Q. What did you say? A. I said I wanted that money to earn money, to pay interest if I have to pay that judgment. Q. Is that all you stated to him about it at that time? A. Well, I says to him, 'I don't know how to go at this;' I says, 'I have an account in this book.' Q. At that time you borrowed money frequently from the bank? A. Yes, sir. Q. Large sums of money? A. Yes, sir. Q. What, if anything, did you say to him about your borrowing money from the bank at different times after that? A. I asked him, 'How you come to make out the account?' I have the book; it was 'Morris Gross, Special,' and transfer from this to that, and straighten me out, if this money is going to draw me interest. He said— Q. Examine exhibit 2, and state what that is. A. This was money that was drawing the interest I— Q. That is not what I want you to tell. Is this the book he gave you at that time? A. Yes; that is the other book; he dug it up. Q. Is this the way he proposed to make it draw interest for you? A. Yes; 'This is the way to do it,' he says, 'I will fix it for you; it will draw interest.' He went to work and took up the credits in there and put them in here, and he said, 'You will get your interest.' "

The two notes sued upon were given January 7, 1911, for $1,000 each, and two days later the balance of the special account, $6,487.76, was withdrawn from the bank upon the personal check of defendant, signed "Morris Gross, Special." At that time he demanded interest upon the special deposit, which was refused. As he was compelled to pay the judgment which had then been rendered against him in the federal court, he withdrew the principal of the deposit, without prejudice to his claim for interest thereon. There is nothing in this circumstance, nor in any other shown in the evidence, so far as we can see, that tends

to corroborate the defendant's testimony, and certainly the evidence of contract to pay interest on this open account is not such as to require us to say that the trial court is clearly wrong.

The judgment of the district court is therefore

AFFIRMED.

LETTON, FAWCETT and HAMER, JJ., not sitting.