PAMELA SUE MINDT, APPELLEE, v. CLARENCE D. SHAVERS, APPELLANT.

337 N.W.2d 97

Filed July 15, 1983. No. 81-720.

John R. Doyle, for appellant.

Stanley D. Cohen, for appellee.

KRIVOSHA, C.J., BOSLAUGH, McCOWN, WHITE, HASTINGS, CAPORALE, and SHANAHAN, JJ.

KRIVOSHA, C.J.

The appellant, Clarence D. Shavers, appeals from a jury verdict finding Shavers liable to the appellee, Pamela Sue Mindt, in the amount of $60,000 for intentionally and recklessly causing severe emotional distress to Mindt. Shavers maintains that the verdict must be reversed because of one of several errors. He first claims that the cause of action was for assault and battery and was therefore barred by the running of the statute of limitations. He also claims that the District Court did not acquire jurisdiction over the person of Shavers due to a defective affidavit of service on the out-of-state summons return, and, finally, that the amount of the verdict was the result of passion and prejudice created by both an improper statement made by Mindt's counsel during opening statements and a voluntary statement made by Mindt during cross-examination. We have reviewed the record and find no such errors. We therefore affirm the judgment.

Shavers did not appear at the trial and offered no testimony; therefore, much of the evidence produced by Mindt is undisputed. The evidence discloses that on February 15, 1979, Mindt was sexually assaulted by Shavers while both were on duty at the Army Reserve headquarters in Lincoln, Nebraska. Shavers was on assignment from Fort Riley, Kansas, in order to instruct Mindt, a Specialist Fourth Class with the Army Reserve, on the use and operation of microfilm for documentation purposes.

The first incident giving rise to the suit occurred in the microfiche room on the lower level of the 162d Medical Battalion building. Mindt testified that without warning Shavers touched her breasts against her will and unzipped her jeans and touched her genitals. Mindt resisted Shavers' advances and

was able to return to the main floor of the building, where she advised her superior officer, a Sergeant Major Entsminger, that she did not want to work with Shavers again.

Shortly thereafter, however, Mindt was directed by Entsminger to accompany Shavers to a Quonset hut in order to locate a technical manual that Shavers had requested. Once inside the Quonset hut, Shavers continued to sexually harass Mindt, both verbally and physically. Over objections and against her will, Shavers again placed his hands on Mindt's body and, after partially removing her jeans, forcibly sexually assaulted her. As she was resisting and pushing Shavers away, he ejaculated on her body and on her clothing. Mindt returned to the main building in an extremely agitated condition and after a few minutes requested permission to leave and go home. Later that day she reported the incident to her sister. She returned to the reserve base the next afternoon and reported the incident to Sergeant Major Entsminger, who documented the event and informed the battalion commander. She then sought medical care. On February 17, 1979, Sergeant Major Entsminger telephoned Shavers at his residence in Fort Riley, Kansas, and confronted him with Mindt's accusations. Initially, Shavers denied all involvement, but after Entsminger told Shavers that he had Mindt's semen-stained clothing, Shavers admitted everything but penetration.

On August 20, 1980, Mindt filed a petition in the District Court for Lancaster County, Nebraska, alleging that Shavers had committed various sexual acts upon her which caused Mindt to suffer severe emotional distress. She further alleged that as a result of this emotional distress she had incurred and would continue to incur medical expenses for necessary care and treatment, and prayed for judgment against Shavers both for special damages and for general damages.

An out-of-state summons was issued to the sher-

iff's department of New Hanover County, North Carolina, for service upon Shavers, who was then residing in North Carolina. On October 6, 1980, a copy of the out-of-state summons, together with an affidavit of service, was filed in the office of the clerk of the District Court for Lancaster County, Nebraska. The affidavit of service was signed by an S. N. Murphy, who was purportedly a deputy sheriff of the New Hanover County, North Carolina, sheriff's department. On the face of the affidavit of service it does not appear that the signature of Murphy was notarized. Thereafter, a special appearance was filed by Shavers, and on November 21, 1980, the trial court sustained the special appearance, though the record does not disclose the basis therefor. On December 10, 1980, a second affidavit of service was filed. The second affidavit of service was obviously a copy of the first affidavit of service except that it contained the name of the deputy sheriff and his signature was now notarized. A subsequent special appearance filed by Shavers was overruled. Thereafter, Shavers, reserving his special appearance, filed an answer in which he denied the allegations of Mindt's petition, and subsequently a trial to the jury was held.

Turning to Shavers' first assignment of error, that the action was barred by the statute of limitations, we believe that Shavers is in error. Shavers' argument is that the actions, if taken by Shavers against Mindt, constituted an assault and battery, and, therefore, any suit pursuant to the provisions of Neb. Rev. Stat. § 25-208 (Reissue 1979) must be filed within 1 year from the date on which the cause of action arose or be thereafter barred. It is conceded that the action was not filed within 1 year but was filed within 4 years, the appropriate time for filing an action for either an intentional tort or negligence. See Neb. Rev. Stat. § 25-207 (Reissue 1979).

The fact that Shavers' touching of Mindt may constitute an action for assault and battery, if so pleaded,

does not thereby preclude any other appropriate action from being brought. As we noted recently in *Interholzinger v. Estate of Dent,* *ante* p. 264, 333 N.W.2d 895 (1983), a "cause of action" is the operative facts which give rise to a "right of action" or the remedial right affording redress. Thus, there may be several rights of action arising out of a cause of action. 1 Am. Jur. 2d *Actions* § 2 (1962). See, also, 1 C.J.S. *Actions* § 8(b) (1936). A single cause of action may give rise to more than one theory upon which recovery may be had. An example is our recent decision of *P. R. Halligan Post 163 v. Schultz,* 212 Neb. 329, 322 N.W.2d 657 (1982), wherein a petition containing two theories was filed against the parents of a 13-year-old boy to recover damages to a building and its contents allegedly caused when the minor set fire to the building. Under the first theory it was alleged that the parents were liable for the willful and intentional acts of their son under the provisions of Neb. Rev. Stat. § 43-801 (Reissue 1978). Under the second theory it was alleged that the parents were negligent in the supervision of their minor son in specified particulars. A demurrer to the first cause of action was sustained and an appeal was taken to this court. We dismissed the appeal on the basis that there was still pending a second cause of action arising out of the same facts for which recovery might be had. In doing so, we said at 331-32, 322 N.W.2d at 658-59: " 'The judicial unit for an appeal is the final determination of the issues arising from a set of facts involved in the same transaction or occurrence, and not the determination of an individual issue not disposing of the action. An order dismissing some of several alternative counts, each stating only one legal theory to recover damages for the same wrong, is not considered an appealable judgment while the other counts remain pending because the counts are concerned with a single fact situation. . . . It is the differing transactions or occur-

rences giving rise to a claim that forms the basis of separate units of judicial action and not the differing legal theories or issues presented for recovery.' ''

In the *P. R. Halligan* case we recognized that one set of facts might give rise to both an action for intentional tort and, likewise, an action of negligence, and the bringing of one would not bar the other. Obviously, if the plaintiff in the *P. R. Halligan* case could have brought an action on two legal theories, then obviously it could have selected one or the other legal theory upon which to bring the case.

Furthermore, in the case of *Jones v. Wittenberg University*, 534 F.2d 1203 (6th Cir. 1976), the U.S. Court of Appeals was presented with a case seeking to recover damages for the wrongful death of a student who was shot and killed by a university guard. The university argued that a cause for wrongful death could not exist because the shooting by the guard was an intentional act and therefore could not constitute a negligent act giving rise to a cause of action for wrongful death. In rejecting that argument and affirming the jury verdict, the Court of Appeals said at 1208-09: "Appellant argues that a finding of negligence may not be grounded on a wilful and intentional act. However, this argument overlooks the principle of tort law that an intentional act may be so negligently performed that it results in civil liability for the actor. To a degree all negligent conduct is intentional in that it is *voluntary*. Even though injury may be unintended, the act which lead [sic] to the injury to be actionable negligence must be the product of the actor's will.

. . . .

". . . The voluntary act of firing a pistol is an intentional act, even though harm was not intended, but it may constitute negligence if it was done so carelessly as to result in foreseeable injury."

Applying this principle to the instant case, it is apparent that the facts of the case give rise to two possible theories of recovery, one for assault and bat-

tery and the other for the intentional infliction of severe emotional distress. Although Mindt could have chosen to seek recovery on the theory of assault and battery, if properly pleaded, she is also able to seek recovery on the theory of an intentional infliction of emotional distress, a totally independent tort in the State of Nebraska.

The very nature of the tortious act involved herein, while it does involve elements sufficient to constitute an assault and battery, is uniquely appropriate for a suit based upon a theory of intentional infliction of emotional distress. A sexual assault has been described by one author in the following manner: "They [the victims] experience complete loss of control of the body, complete loss of independence, and the removal of something that is part of them. The inner space is intruded upon and the most sacred and the most private repository of the self has been violated. Forceful access has been into the innermost source of the ego. Rape has been said to be the closest one can come to destroying the ego except for murder. . . . The emotional consequences of sexual assault are acutely disabling and chronically debilitating in many if not most victims." Hicks, *Rape: Sexual Assault*, 137(8) Am. J. of Obstetrics and Gynecology 931, 932-33 (August 15, 1980). A sexual assault may involve much more than a mere assault and battery.

It is clear from both the pleadings and the evidence adduced that Mindt sought and obtained recovery not for the damage resulting from a mere assault and battery of her person but, rather, for severe emotional distress caused by the extreme and outrageous conduct of Shavers. She testified that she suffered fear of pregnancy and had been given "morning after" pills which caused severe nausea and abdominal cramping. Her relationships with men deteriorated and she was unable to continue living with her brother. She became more isolated and experienced shame, humiliation, fear, and a

lowered self-esteem. Preoccupation with the incident resulted in a loss of concentration and a lower scholastic grade average. She changed her major and transferred to a different university. She also changed her service affiliation from the Army Reserve to the Nebraska National Guard. The evidence established that the emotional distress began to manifest itself physically as evidenced by insomnia, weight loss, and a dramatic increase in smoking and alcohol consumption. She suffered from nightmares in which she relived the assault twice weekly for 3 to 4 months after the assault.

Mindt then sought professional counseling at the urging of her sister, who referred her to a Dr. Jack Richman, a certified therapist and psychologist specializing in marriage and family therapy. He testified in great detail about the symptoms Mindt exhibited and formed a diagnosis of adjustment disorder with mixed emotional features. This disorder was an acute reaction to an overwhelming environmental stressor, the sexual assault.

Mindt also sought counseling at the Rape-Spouse Abuse Crisis Center. Its coordinator, Jo Ann Dunn, M.S.W., testified in great detail about the emotional distress suffered by Mindt as a result of the sexual assault.

Shavers offered no evidence to dispute the testimony given on this issue. His contention, therefore, that Mindt offered no medical or psychological evidence to support her claim for damages in an action for severe emotional distress is wholly unsupported. It is clear that the action was pled and tried as one arising out of the intentional tort of causing severe emotional distress and not as an assault and battery. Shavers' contention, therefore, that the suit was barred by the statute of limitations is simply without merit and must be overruled.

Shavers' second contention with regard to the return of service and the court's lack of jurisdiction is likewise without merit. A simple examination of the

return of service makes it abundantly clear that Shavers was properly served. It is not the service which was defective, but only the return of service. We have frequently held that the court does not lose jurisdiction by reason of a defect in the return of service if proper service was made, and the return may, at any time, be amended to reflect the truth of the matter. Specifically, in *State Furniture Co. v. Abrams*, 146 Neb. 342, 346-47, 19 N.W.2d 627, 630 (1945), we said: " 'If service of the summons in a case is, in fact, made on the defendants, that gives the court jurisdiction to render a valid judgment, so far as the service of process is concerned, though the evidence of record, constituting the proof of service, may fail in essential particulars to establish that such service was in fact made. In cases where service was in fact had, the court has jurisdiction, and may after judgment permit an amendment of the record to supply omissions necessary to show that the service was in fact made.' " See, also, *De Lair v. De Lair*, 146 Neb. 771, 21 N.W.2d 498 (1946). Absent any evidence to show that Shavers was not in fact served as set out in the affidavit of service, his contention that the court did not acquire jurisdiction over his person must be overruled.

We then turn to Shavers' final assignment of error, that the verdict was excessive and the result of passion and prejudice. Shavers maintains that the proof of his claim is a statement made by Mindt's counsel in the opening statement wherein counsel, in describing the absent defendant, advised the jury that he was a large black male. Shavers' counsel moved for a mistrial, which the trial court denied. The trial court, however, admonished the parties that if the statement was later shown to be irrelevant he would declare a mistrial at the end of the trial. The relevancy of the evidence was established. During the course of the trial, evidence on several occasions by several witnesses came in describing Shavers as a black male, all without objection.

The question as to whether a reference to a defendant's race was proper or not is, at best, a difficult question to answer. Nor does the mere mention of one's race, standing alone, assist us in answering the question.

A statement by counsel in the trial of a civil action relating to race may be, but is not necessarily, improper or prejudicial. The primary considerations are whether the statement in question has any relevancy to or legitimate bearing on the issues in the case and, if not, whether it is calculated or has a tendency to arouse racial prejudice. It has been recognized that the line between a legitimate reference to race and an appeal to racial prejudice is a fine one. See Annot., 99 A.L.R.2d 1249 (1965).

While we do not suggest for a moment that one may ever refer to a defendant's race if the only possible purpose could be to incite the passion or prejudice of the trier of facts, we likewise do not suggest that there may not be occasions when such reference is legitimate, as, for instance, when the identification of a party is relevant to the case. At a minimum, because of Shavers' absence from trial and his denial that he had committed the act, such a description was relevant to establish that the individual Mindt charged with the assault was in fact Shavers. In addition to the mere description given by counsel in his opening statement, several witnesses described Shavers.

Without objection, Mindt's sister testified that her sister told her, following the attack, that "A Black man sexually assaulted me." Furthermore, Sergeant Major Entsminger testified, without objection, that Shavers was "a six-foot-three-inch, four-inch, very muscular appearing, physically imposing Black American" who weighed "between 230 and 250 pounds."

Further, Mindt introduced evidence, supported by both Dr. Richman and Ms. Dunn, as a component of her proof of damages, that she was no longer able to

work comfortably around blacks and had terminated friendships with blacks after the assault, whereas before the assault she was comfortable with blacks. Shavers' counsel made no objection to this testimony. A fair examination of the record leads one to the conclusion that the evidence of Shavers' race was relevant to several issues in the case, including a description of Mindt's assailant and damages, and was not calculated to arouse racial prejudice, particularly in view of Shavers' absence.

Shavers also argues that the jury was prejudiced by a spontaneous, unresponsive answer given by Mindt during cross-examination. In an effort apparently to show that Mindt had encouraged the assault, Mindt was asked: "And you say you didn't do anything to encourage him to do anything like this?" She responded, "No. And did the other four women either." Shavers' counsel immediately moved to strike the testimony, which motion was granted. He then moved for a mistrial on the ground of prejudice, which was overruled. The trial court, unsure that the jury had even been able to hear the response, instructed the jurors to disregard everything after "No." The appropriate corrective measure was taken and the motion for a mistrial was properly overruled. *Madison Nat. Bank v. Gross*, 98 Neb. 684, 154 N.W. 207 (1915); *Omaha S. R. Co. v. Beeson*, 36 Neb. 361, 54 N.W. 557 (1893).

The evidence in this case simply does not support the contention that the amount of the recovery was excessive or the result of passion or prejudice, and absent such a showing the verdict may not be set aside. *Huskinson v. Vanderheiden*, 197 Neb. 739, 251 N.W.2d 144 (1977). The third assignment of error must therefore be overruled.

Having found no error, the judgment of the trial court is affirmed.

AFFIRMED.

BOSLAUGH, J., concurs in the result.