K.M., a minor child, Plaintiff,

v.

ALABAMA DEPARTMENT OF YOUTH SERVICES, et al., Defendants.

C.B., a minor, Plaintiff,

v.

Alabama Department of Youth Services, et al., Defendants.

T.A.B., a minor, Plaintiff,

v.

Alabama Department of Youth Services, et al., Defendants.

K.T., a minor, Plaintiff,

v.

Alabama Department of Youth Services, et al., Defendants.

Civil Action Nos. 2:02cv320 to 2:02cv323–T.

United States District Court, M.D. Alabama, Northern Division.

March 9, 2005.

Michael J. Crow, Beasley Allen Crown Methvin Portis & Miles PC, Montgomery, AL, for Plaintiff/Consol Plaintiffs.

Robert Dean Drummond, Jr., Fairhope, AL, for Consol Plaintiffs.

Andrew W. Christman, Steven Keith Herndon, Gidiere, Hinton & Herndon, Montgomery, AL, for Intervenor Plaintiff.

Christina Harris Jackson, Christopher Kyle Whitehead, Henry Lewis Gillis, Kenneth Lamar Thomas, Monet McCorvey Gaines, Ramadanah Maryum Salaam, Thomas Means Gillis & Seay PC, Montgomery, AL, John Wesley Adams, Jr., Kennedy, Bell & Adams, Mobile, AL, Tamica Clemons Richard, Bentonville, AR, William James Samford, II, Alabama Department of Youth Services, Mt. Meigs, AL, Frederic Allen Bolling, James L.

Richey, Valerie LaShawn Acoff, Thomas Means Gillis & Seay PC, Andrew Clay Allen, Peter Harrington Burke, William Todd Harvey, Whatley Drake, LLC, Vivian Vines Campbell, Emond Vines Gorham & Waldrep PC, Stephen Cochran Wallace, William Monroe Dawson, Jr., Birmingham, AL, for Defendants.

Adrian Carrie Payne, Hand Arendall, LLC, James M. Wooten, Mark Thomas Waggoner, Roger L. Bates, Hand Arendall, LLC, Birmingham, AL, Allen R. Stoner, Allen R Stoner, PC, Decatur, AL, for Consol Defendant.

Jack Allen Blumenfeld, Dothan, AL, Sharon E. Ficquette, Alabama Department of Human Resources, Montgomery, AL, Sara Thomason Baker, District Attorney's Office, Cullman, AL, David W. Langston, Harris, Caddell & Shanks, P.C., Decatur, AL, David Wyatt Huddleston, Alabama Department of Mental Health & Mental Retardation, Tuscaloosa, AL, Edward Hamilton Wilson, Jr., Ball Ball Matthews & Novak PA, Montgomery, AL, Bret M. Gray, Griffin & Associates, Hoover, AL, William E. Shinn, Jr., Harris, Caddell & Shanks, P.C., Decatur, AL, Kenny Mallow Williamson, Robert Marc Givhan, Johnston, Barton, Proctor & Powell, LLP, Birmingham, AL, for Movant.

## ORDER

MYRON H. THOMPSON, District Judge.

These consolidated cases are now before the court on defendant Peter Aseme's motion for summary judgment filed pursuant to Rule 56(c) of the Federal Rules of Civil Procedure, which provides that summary judgment is appropriate where "there is no genuine issue as to any material fact and ... the moving party is entitled to a judgment as a matter of law."

For the reasons that follow, the court concludes that the summary-judgment motion should be denied.

## I. Introduction

Plaintiffs K.M., C.B., T.A.B., and K.T. bring these consolidated cases against the following defendants: the Alabama Department of Youth Services (DYS), DYS Executive Director Walter Wood, former DYS Chalkville Campus Superintendent James Caldwell, and former DYS employees Aseme and John Zeigler. Plaintiffs are former juvenile detainees who claim that, while they were in the custody of DYS and housed at Chalkville, they were sexually and physically assaulted and harassed by Aseme and Zeigler. Plaintiffs claim that not only are Aseme and Zeigler liable to them, but that Wood, Caldwell, and DYS are responsible for allowing the assaults and harassment to take place.

Plaintiffs base their legal claims against Aseme on the Fourteenth Amendment right to substantive due process and the Eighth Amendment right to be free from cruel-and-unusual punishment, both rights as enforced through 42 U.S.C.A. § 1983, and on the state-law torts of negligence, wantonness, assault and battery, and outrage.

The jurisdiction of the court is properly invoked pursuant to 28 U.S.C.A. §§ 1331 (federal question), 1343 (civil rights), & 1367 (supplemental jurisdiction).

## II. Background

The evidence-presented in the light most favorable to plaintiffs because they are the nonmoving parties and because these cases are before the court on a summary-judgment motion, *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986)—is as follows.

Chalkville is a juvenile detention center for young women between the ages of 12 and 18. These cases arise in the context of public, widespread allegations of sexual abuse and harassment by employees at the

Chalkville campus against detainees. As stated, the four plaintiffs were juvenile detainees, in the custody of DYS and housed at Chalkville, at the time of the alleged assaults.

Aseme was a youth services aid/child care worker at Chalkville during the dates at issue. His responsibilities included "observ[ing] students so that visual contact is maintained at all times through head checks and cottage counts," monitoring and documenting consumption of medicine, restraining students when necessary, searching students and their belongings, and administering first aid.[1]

T.A.B. is the only plaintiff in this case to state a claim against Aseme. She alleges that, while she was at Chalkville, between December 1999 and May 2001, she was sexually assaulted by Aseme. According to T.A.B., at some point between January and May 2001, Aseme approached her while she was alone in the laundry room and touched her vagina. T.A.B. did not tell anyone about the abuse by Aseme until after DYS launched an official investigation into the matter.

### III. Discussion of Claims

*Federal Claim:* As stated, T.A.B. alleges that Aseme sexually assaulted her, that is, that while she was in the laundry room, he allegedly touched her vagina without her consent. T.A.B. claims that, in doing so, Aseme violated her Eighth Amendment right to be free from cruel-and-unusual punishment and her Fourteenth Amendment right to substantive due process, as the rights are enforced through § 1983. In his defense, Aseme contends: (1) T.A.B.

has not alleged that he violated any right protected by the Constitution; (2) T.A.B. has not produced sufficient evidence to survive summary judgment [2]

■ There is clearly a right, under the Fourteenth Amendment, to bodily integrity. "There is a right to be free from sexually motivated assaults. As several courts in the Eleventh Circuit have recognized, substantive due process under the Fourteenth Amendment includes a right to bodily integrity." *Thomas v. City of Clanton,* 285 F.Supp.2d 1275, 1280 (M.D.Ala. 2003) (Thompson, J.) (citing *Romero v. City of Clanton,* 220 F.Supp.2d 1313, 1316 (M.D.Ala.2002) (Albritton, C.J.); *Johnson v. Cannon,* 947 F.Supp. 1567, 1572–73 (M.D.Fla.1996) (Kovachevich, C.J.); *Battista v. Cannon,* 934 F.Supp. 400, 404 (M.D.Fla.1996) (Kovachevich, C.J.)).

■ Substantive-due-process analysis would not be appropriate if the claim can be addressed through enforcement of T.A.B.'s Eighth Amendment right to be free from cruel-and-unusual punishment. This is because, "if a constitutional claim is covered by a specific constitutional provision, such as the ... Eighth Amendment, the claim must be analyzed under the standard appropriate to that specific provision, not under the rubric of substantive due process." *United States v. Lanier,* 520 U.S. 259, 272 n. 7, 117 S.Ct. 1219, 1228 n. 7, 137 L.Ed.2d 432 (1997). Under *Lanier,* this court must determine if the interest T.A.B. alleges was impaired is protected by the Eighth Amendment or the Fourteenth Amendment. If more than one constitutional provisions protects the right

1. DYS's and Wood's evidentiary submission in support of motion for summary judgment (Doc. no. 162), exhibit 44 (youth services aide/child care worker/shift supervisor job description).

2. Aseme originally contended that T.A.B.'s claim was time-barred. In his reply brief,

however, he notes that, because T.A.B. was a minor at the age of the alleged acts, her claim was tolled until she reached age 19, and "concedes the inaccuracy" of his argument that the claim was time-barred. Defendant Aseme's reply brief in support of motion for summary judgment (Doc. no. 229), at 7.

at issue, the court must apply the analysis for the more specific constitutional provision, which is, in this case, the Eighth Amendment.

■ The Eighth Amendment applies in only the criminal context. Thus, "[i]n the few cases where the [Supreme] Court has had occasion to confront claims that impositions outside the criminal process constituted cruel and unusual punishment, it has had no difficulty finding the Eighth Amendment inapplicable." *Ingraham v. Wright*, 430 U.S. 651, 667–668, 97 S.Ct. 1401, 1410, 51 L.Ed.2d 711 (1977). The Supreme Court explained why the Eighth Amendment does not apply to schoolchildren:

> "The prisoner and the schoolchild stand in wholly different circumstances, separated by the harsh facts of criminal conviction and incarceration. The prisoner's conviction entitles the State to classify him as a 'criminal,' and ... [p]rison brutality, as the Court of Appeals observed in this case, is 'part of the total punishment to which the individual is being subjected for his crime and, as such, is a proper subject for Eighth Amendment scrutiny.' 525 F.2d. at 915. Even so, the protection afforded by the Eighth Amendment is limited. After incarceration, only the ' 'unnecessary and wanton infliction of pain,'' *Estelle v. Gamble*, 429 U.S. at 103, 97 S.Ct. at 291, quoting *Gregg v. Georgia*, 428 U.S. at 173, 96 S.Ct. at 2925, constitutes cruel and unusual punishment forbidden by the Eighth Amendment."

*Ingraham*, 430 U.S. at 669–670, 97 S.Ct. at 1411 (1977).

Determining if the Eighth Amendment applies to juvenile detainees is complicated; it essentially poses the question of whether a juvenile detainee is more like a convicted criminal or more like a schoolchild. While a juvenile detention facility is partially a correctional institution, it is also a school; it is meant to discipline as opposed to punish; its facilities are also intended to be rehabilitative and educational. The Alabama Juvenile Justice Act, which authorizes the detention of juveniles, is intended to "facilitate the care, protection, and discipline of children who come within the jurisdiction of the juvenile court, while acknowledging the responsibility of the juvenile court to preserve the public peace and security." 1975 Ala.Code § 12–15–1.1.

The Alabama Code further clarifies the distinction between juvenile detention and criminal adjudication: an adjudication of delinquency "shall not be considered a conviction or impose any civil disabilities ordinarily resulting from a conviction of a crime or operate to disqualify the child in any civil service application or appointment." 1975 Ala.Code § 12–15–72.

The case law in the Eleventh Circuit supports the conclusion that juvenile detainees' rights should be analyzed under the Fourteenth, not the Eighth, Amendment. For example, in a case addressing the rights of *pretrial* juvenile detainees, the Eleventh Circuit Court of Appeals reasoned that "[a]kin to the interests of school children to be free of excessive corporal punishment, the conditions of detainee incarceration affect liberty interests protected by the fourteenth amendment rather than the eighth." *H.C. by Hewett v. Jarrard*, 786 F.2d 1080, 1085 (11th Cir.1986).

■ Therefore, although the law in this area is not entirely settled, *see Nelson v. Heyne* 491 F.2d 352, 354 (7th Cir.1974) (noting that a school for juvenile detainees "is a correctional, as well as an academic, institution" and applying an Eighth Amendment analysis to determine the constitutionality of supervised beatings of students), it appears that, at least in the Eleventh Circuit, and under Alabama's definition of a juvenile delinquent, juvenile

detainees' rights should not be addressed under the Eighth Amendment. Instead, juvenile detainees are afforded more rights than simply protection from "wanton and unnecessary pain," which is the standard under which their claims would be analyzed if the Eighth Amendment applied. As the Supreme Court has noted, there is no reason to subject juveniles to the "total punishment" to which convicted criminals are subjected. *Ingraham*, 430 U.S. at 669–670, 97 S.Ct. at 1411 (quoting *Ingraham v. Wright*, 525 F.2d 909, 915 (5th Cir.1976)). It is therefore proper to analyze a juvenile detainee's right to bodily integrity under the due-process clause of the Fourteenth Amendment.

■ In any event, the specific conduct which T.A.B. alleges took place would clearly violate her rights under the Eighth Amendment as well; that is, the sexual assault of a prisoner by a guard surely meets the "wanton and unnecessary pain" standard, for there is absolutely no possibility that Aseme's alleged acts served a legitimate purpose. Therefore, under both the Eighth Amendment and the Fourteenth Amendment, Aseme's contention that his alleged acts do not violate a constitutional right is without merit.

■ Finally, T.A.B. has presented sufficient evidence for her claim to survive summary judgment. T.A.B. testified in her deposition that Aseme assaulted her. Furthermore, one of the reasons Aseme was fired by DYS was because, after an evidentiary hearing, DYS Executive Director Wood found that the allegation that "on one occasion in the laundry room you put your finger or fingers in her [T.A.B.'s] vagina" was "founded."[3] T.A.B. has stated a specific set of facts and put forth evidence from which a reasonable jury could conclude that Aseme did, in fact, sexually assault her. T.A.B.'s federal-law claim against Aseme survives summary judgment.

■ *Outrage Claim:* The court turns next to T.A.B.'s claim of outrage against Aseme.[4] The tort of outrage has the following elements: (1) the defendant must have intended to inflict emotional distress, or should have known that his or her acts would result in emotional distress; (2) the act must be extreme and outrageous; (3) the act must have caused plaintiff's distress; and (4) plaintiff's emotional distress must have been so severe that no reasonable person could be expected to endure it. *Harrelson v. R.J.*, 882 So.2d 317, 322 (Ala. 2003).

T.A.B. contends that Aseme's alleged conduct meets this test because (1) Aseme should have known that sexually assaulting her would result in emotional distress; (2) the act of a DYS employee inserting his finger into a detainee's vagina, particularly when the detainee is a minor and the employee is responsible for supervising her, is extreme and outrageous; (3) as a result of Aseme's acts, T.A.B. suffered emotional trauma; and (4) the emotional trauma was so severe that she had to be transferred to a hospital. Aseme, in response, asserts that, even if he did commit the act in question, such an act is not "extreme and outrageous" and any distress T.A.B. suffered was not caused by the abuse.

The first issue this court must address is whether the act of which T.A.B. accuses Aseme is the type of act for which a plaintiff can recover under an action for outrage. Some courts have recognized a claim of outrage in situations of intentional

---

**3.** Plaintiffs' Response to Defendants' Motion, exhibit 15 (Wood letter to Aseme).

**4.** An outrage claim is essentially equivalent to what many states refer to as "intentional infliction of emotional distress."

sexual abuse or rape. *E.g., Mindt v. Shavers,* 214 Neb. 786, 337 N.W.2d 97 (1983) (where plaintiff had alleged severe emotional trauma as a result of rape, she could proceed under the theory of intentional infliction of emotional distress, even though her claim could have also been brought as an assault and battery claim); *Croom v. Younts,* 323 Ark. 95, 913 S.W.2d 283 (1996) (recovery for intentional infliction of emotional distress allowed where 51–year–old defendant gave 15–year–old cousin alcohol and drugs, had sexual relations with her, and pursued the relationship that he knew was emotionally traumatic to her and caused her to attempt suicide).

Other courts have refused to allow a claim of outrage when the facts fit into a more traditional common-law tort regime, such as assault and battery. These courts reason that the tort of outrage was intended to be a "gap filler" in tort law, allowing for plaintiffs to recover only when they were unable to do so under traditional common-law actions. As one court explained:

> "Taking into account the history of the tort of outrage, and its reason for being as a 'gap-filler' providing redress for extreme emotional distress in those instances in which the traditional common law actions did not, we believe ... that where an actor's conduct amounts to the commission of one of the traditional torts such as assault, battery, or negligence for which recovery for emotional distress is allowed, and the conduct was not intended only to cause extreme emotional distress in the victim, the tort of outrage will not lie. Recovery for emotional distress in those instances must be had under the appropriate traditional common law action. The tort of outrage was intended to supplement the existing forms of recovery, not swallow them up."

*Rigazio v. Archdiocese of Louisville,* 853 S.W.2d 295, 298–99 (Ky.App.1993).

■ Alabama courts do recognize the tort of outrage for sexual harassment or assault cases, but only in particularly egregious cases. *Compare Harrelson v. R.J.,* 882 So.2d 317 (Ala.2003) (allowing for recovery for tort of outrage in case where minor was sexually assaulted by her friend's step-father), *with Turner v. Hayes,* 719 So.2d 1184, 1187 (Ala.Civ.App. 1997) (woman who claimed her supervisor sexually harassed her by touching her under the armpits, near her breasts, on her leg, trying to look up her skirt, making sexual innuendo, and touching his genital area in her presence, had not stated facts so "flagrantly egregious" as to state a claim for outrage), *rev'd on other grounds Ex parte Atmore Cmty. Hosp.,* 719 So.2d 1190 (Ala.1998); *see also Saville v. Houston County Healthcare Auth.,* 852 F.Supp. 1512, 1541 (M.D.Ala.1994) (Thompson, J.) (conduct of defendant, who touched plaintiff on the ribs and the buttocks and made sexually inappropriate comments to her, did not rise to the level of egregiousness required for a claim of outrage).

■ Construing the facts in the light most favorable to T.A.B., the court finds that the type of conduct Aseme allegedly engaged in is the type for which the tort of outrage would allow recovery.

In *Harrelson,* the Alabama Supreme Court expressly allowed for recovery for tort of outrage in case where minor was sexually assaulted by her friend's stepfather. 882 So.2d 317. Applying *Harrelson,* the court finds that several factors make Aseme's alleged conduct particularly outrageous. First, as in *Harrelson,* T.A.B. was a minor when she was allegedly assaulted. Second, T.A.B. was in state custody and, thus, was vulnerable because she was alone and without the protection parents normally provide from sexual preda-

tors. Third, Aseme was one of the individuals entrusted to care for T.A.B.; not only did he allegedly assault T.A.B., but if he did, he did so by abusing his position of authority. Fourth, T.A.B. was in a highly regulated environment where she was expected to follow the orders of the numerous adults she came into contact with, including Aseme. Aseme's conduct, therefore, rises to the level of egregiousness required for a outrage claim because he took advantage of this situation by using the opportunity that came with his position of power to exploit T.A.B.'s position of extreme vulnerability.

Moreover, Aseme allegedly actually penetrated T.A.B.'s vagina with his finger. Unlike the facts in *Saville* or *Turner*, where the conduct of the defendants amounted to unwanted "groping" and comments, the act that Aseme is accused of is particularly extreme and outrageous. This is not to suggest that penetration or genital contact is a prerequisite to a claim of outrage based on sexual assault or harassment. However, the fact that this allegedly did occur does make Aseme's conduct more egregious than a situation that consisted of verbal harassment or, for example, an unwanted slap on the buttocks.

Finally, the court turns to whether the evidence could support the conclusion that T.A.B. suffered emotional distress so severe that no reasonable person could be expected to endure it. T.A.B. contends the assault happened at some point between January and May 2001, and she was then hospitalized in June 2001. The hospital discharge summary states she admitted "cutting her wrists with staples, pencils and wire out of her bra" and that she had bitten her wrists.[5] Physical findings confirmed this; T.A.B. exhibited "[b]ilateral wrist and chest lesions."[6] Notably, this hospitalization took place close to the time T.A.B. alleged the abuse took place.

Case notes from T.A.B.'s case manager show a decline in T.A.B.'s emotional health during a time period proximate to the alleged assault. On November 21, 2000 her case manager wrote that T.A.B. "[h]as not harmed herself in a long time. She used to cut her arms, mainly for attention."[7] This observation was made immediately before the time period when the alleged assault took place. However, on June 6, 2001, her case manager recorded that T.A.B. "[h]as been hurting herself a lot lately. She cuts herself, bites herself, manufactures things to cut her arms with, etc. Staff must observe [T.A.B.] very closely in order to keep her from making suicide gestures."[8]

In conclusion, the court holds that the evidence does support the conclusion that T.A.B. suffered emotional distress so severe that no reasonable person could be expected to endure it. *See Harrelson*, 882 So.2d at 323–324 (Applying Alabama law, court held that minor plaintiff "has produced evidence of such weight and quality that fair-minded persons in the impartial exercise of judgment could reasonably infer that [she] had suffered emotional distress so severe that no reasonable person could be expected to endure it," where she has shown that, as a result of sexual assault, she "became much more emotional, ... cries much more than she did before the assault, ... for some time after the assault, which occurred around March 14 and 15, ... would become hysterical

---

**5.** Defendant Aseme's evidentiary submissions in support of motion of summary judgment (Doc. no. 149), exhibit 8 (T.A.B. hospital records).

**6.** *Id.*

**7.** Plaintiffs' Response to Defendants' Motion, exhibit 25 (T.A.B. service plan/release summary).

**8.** *Id.*

around the 14th and 15th of each month, ... has been traumatized by the assault, ... has become a much more fearful person than she was before, [and] although she has been to see 'shrinks and stuff,' visits with mental health experts only made her feel worse.").

 Nonetheless, Aseme responds that, because T.A.B. had serious mental health problems before the assault, any emotional distress she exhibited after the assault was merely a continuation of her earlier problems. Aseme contends that, even if he did assault T.A.B., T.A.B. cannot establish that her emotional distress was caused by the assault, and not caused by incidents that occurred before the assault.

There is no doubt that T.A.B. experienced great stress prior to her commitment to Chalkville, including the loss of many family members. A psychological evaluation given to T.A.B. upon her entry to DYS stated that T.A.B. "[h]as certainly experienced a great deal of trauma in her life, and seems to have few skills for coping. She also appears to have very poor self-esteem and sees herself as having little value as a person. She seems to have been deprived of a healthy childhood and appears to have an inappropriate level of responsibility in the home and for her mother." [9] Furthermore, the evaluation suggested "that [T.A.B.] may have a significant problem with depression." [10]

However, the fact that T.A.B. entered Chalkville having already experienced a great deal of emotional trauma does not bar a reasonable jury from concluding that Aseme's acts caused T.A.B.'s mental health to deteriorate. Because there is no set limit to a person's capacity to be emotionally harmed, even if T.A.B. was seriously depressed and emotionally traumatized before the incident, a jury could still find that

Aseme's acts seriously exacerbated T.A.B.'s condition and therefore caused her extreme emotional distress.

But more to the point, the reason DYS juvenile detainees are in DYS custody is *not* because they are well adjusted or otherwise mentally healthy but rather because they suffer from emotional, social, and other mental health problems. Indeed, what particularly lifts this case into the realm of the outrageous is that allegedly, out of a carnal desire to satisfy his own pleasures and needs, Aseme abused his state-conferred authority to take sexual advantage of a minor girl who he must have known was more than likely already severely emotionally damaged. Aseme's argument, which is essentially that because T.A.B. was already emotionally damaged it cannot be determined whether she was further emotionally damaged as result of his alleged conduct, is therefore forcefully rejected by the court.

*Assault and Battery Claim:* T.A.B. claims that Aseme is liable to her for assault and battery. "[T]o succeed on a claim alleging battery, a plaintiff must establish: (1) that the defendant touched the plaintiff; (2) that the defendant intended to touch the plaintiff; and (3) that the touching was conducted in a harmful or offensive manner." *Ex parte Atmore Cmty. Hosp.,* 719 So.2d 1190, 1193 (Ala. 1998).

Aseme contends that assault and battery requires that the touching be done in a "rude or angry manner," *Whitlow v. Bruno's, Inc.,* 567 So.2d 1235, 1239 (Ala.1990), and that even if he did touch T.A.B., the touching was not done in a rude or angry manner.

 Although Aseme is correct that Alabama courts have said that the touch-

---

9. *Id.*

10. *Id.*

ing must be "rude or angry," this is not a narrow concept: "Indecency is within the meaning of rudeness." *Turner v. State*, 41 Ala.App. 310, 131 So.2d 428, 430 (1961); *see also Surrency v. Harbison*, 489 So.2d 1097, 1104 (Ala.1986) (quoting *Singer Sewing Machine Co. v. Methvin*, 184 Ala. 554, 63 So. 997, 1000 (1913)) ("A battery consists in an injury actually done to the person of another in an angry or revengeful or rude or insolent manner, as by spitting in the face, or in any way touching him in anger, or violently jostling him out of the way, or in doing any intentional violence to the person of another.").

 T.A.B. has submitted evidence that Aseme's touching was unwanted, and Aseme does not allege that the touching was consensual. Since the term "rude," in the context of an assault and battery, has been interpreted to include indecent and offensive touching, Aseme alleged sexual molestation of T.A.B., a minor entrusted by the State to his care, would clearly fall within this definition.

*Wantonness Claim:* Wantonness is statutorily defined as "[c]onduct which is carried on with a reckless or conscious disregard of the rights or safety of others." 1975 Ala.Code § 6–11–20. Wantonness "has been defined by [the Alabama Supreme Court] as the conscious doing of some act or the omission of some duty, while knowing of the existing conditions and being conscious that, from doing or omitting to do an act, injury will likely or probably result. To prove wantonness, it is not essential to prove that the defendant entertained a specific design or intent to injure the plaintiff." *Alfa Mut. Ins. Co. v. Roush*, 723 So.2d 1250, 1256 (Ala.1998) (internal citations omitted).

Aseme contends that § 6–11–20 of the 1975 Ala.Code requires wantonness to be proven by clear and convincing evidence. This is incorrect. Section "6–11–20 is irrelevant in regard to motions for summary judgment; 'rather, it defines the standard of proof for determining whether the trier of fact has, or had, the authority to *award* punitive damages.' (Emphasis added.)" *Boudousquie v. Marriott Mgmt. Svs. Corp.*, 669 So.2d 998, 1001 (Ala.Civ.App. 1995) (quoting *Hines v. Riverside Chevrolet–Olds, Inc.*, 655 So.2d 909, 925 (Ala. 1994)).

 Aseme also contends that he should be granted summary judgment on the wantonness claim because T.A.B. has not submitted sufficient evidence of a prima facie case of wantonness. Aseme baldly states that T.A.B.'s "own allegations are incredible, inconsistent and without merit." [11] "Wantonness should be submitted to the jury unless there is a total lack of evidence from which the jury could reasonably infer wantonness." *McDougle v. Shaddrix*, 534 So.2d 228, 231 (Ala.1988). As previously stated, T.A.B. has testified in her deposition that Aseme touched her. Her testimony was corroborated by the letter to Aseme from Wood, explaining the reasons for Aseme's termination. A reasonable jury could certainly conclude that Aseme touched T.A.B. in a manner in which he knew injury was a probable or likely result.

 *Negligence Claim:* "The elements of a negligence claim are a duty, a breach of that duty, causation, and damage." *Armstrong Bus. Servs., Inc. v. AmSouth Bank*, 817 So.2d 665, 679 (Ala.2001). Aseme contends that he is entitled to summary judgment on T.A.B.'s negligence

---

11. Defendant Aseme's reply brief in support of motion for summary judgment (Doc. no. 229), at 4.

claim for two reasons. First, he states that he has state-agent immunity, and second, he contends that T.A.B. cannot show one of the necessary elements of a negligence claim: causation. Aseme's reliance on state-agent immunity is misplaced. While state-agent immunity does exist for state employees who are "discharging duties imposed on a department or agency by statute, rule, or regulation, insofar as the statute, rule or regulation prescribes the manner for performing the duties and the State agent performs the duties in that manner," state-agent immunity is specifically not available for a state employee who acts "beyond his or her authority." *Ex parte Cranman*, 792 So.2d 392, 405 (Ala.2000).

 Aseme did have a duty to observe detainees. However, when Aseme allegedly molested T.A.B., he was not in any way performing a job-related duty. This is clearly an example of an act that is beyond the state-agent's authority, and therefore not covered by state-agent immunity.

Aseme also contends that, even if T.A.B.'s allegations are true, she cannot show that Aseme's acts caused her harm. The court rejects this argument for the same reasons it rejected the argument in regards to T.A.B.'s outrage claim. As previously stated, she has submitted evidence that her mental health seriously deteriorated after the alleged act. T.A.B. has submitted sufficient evidence to allow a jury to conclude that Aseme caused her harm.

\* \* \*

Accordingly, it is ORDERED that defendant Peter Aseme's motion for summary judgment (Doc. no. 147) is denied.